**NATIONAL HOME EQUITY MORTGAGE ASSOCIATION, Plaintiff,**

v.

**E. Joseph FACE, Jr., Commissioner of Financial Institutions, Bureau of Financial Institutions, Virginia State Corporation Commission,**

**Susan E. Hancock, Deputy Commissioner, Consumer Finance, Bureau of Financial Institutions, Virginia State Corporation Commission, Defendants,**

**Mark L. Earley, Attorney General of Virginia, Intervenor–Defendant.**

No. Civ.A.3:99CV398.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 10, 1999.

Earle Duncan Getchell, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, for National Home Equity Mortgage Association, plaintiff.

James Constantine Dimitri, State Corporation Commission, Office of General Counsel, Richmond, VA, Robert A. Dybing, Shuford, Rubin & Gibney, P.C., Richmond, VA, William Frederick Schutt, State Corporation Commission, Richmond, VA, William H. Chambliss, State Corporation Commission, Richmond, VA, for E. Joseph Face, Jr., Susan E. Hancock, defendants.

Martha Blevins Brissette, Mark Lawrence Earley, Judith W. Jagdmann, Office of the Attorney General, Richmond, VA, for Mark L. Earley, movant.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the parties' cross motions for summary judgment regarding the Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801–06, ("the Parity Act") and whether it preempts Virginia laws limiting prepayment penalties. National Home Equity Mortgage Association ("NHEMA" or "plaintiff") has filed a motion for summary judgment asserting that the Parity Act preempts Virginia laws. Defendants E. Joseph Face, Jr., Commissioner of Financial Institutions, Bureau of Financial Institutions, Virginia State Corporation Commission, and Susan E. Hancock, Deputy Commissioner, Consumer Finance, Bureau of Financial Institutions, Virginia State Corporation Commission ("SCC defendants") and Intervenor–Defendant Mark L. Earley, Attorney General of Virginia ("the Attorney General") have also filed motions for summary judgment, both asserting that the Parity Act does not apply to Virginia's statutory prepayment penalty limits. Responses have been filed to each of these motions and, accordingly, the motions are ripe.

Summary judgment may be granted if, after consideration of such items as depositions, affidavits or certifications, and after viewing the facts in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties concede, and the Court agrees, that no material facts are in dispute and that summary judgment is appropriate. For the reasons stated below, the Court grants plaintiff's motion for summary judgment, denies SCC defendants' motion for summary judgment, and denies the Attorney General's motion for summary judgment. The Court permanently enjoins defendants from enforcing their announced position that the Parity Act does not preempt Virginia state law limiting prepayment penalties on alternative mortgage transactions.

### I. FACTUAL BACKGROUND

The plaintiff, NHEMA, is the largest national trade association focusing primarily on the home equity lending market. Members of this voluntary trade association include banks, mortgage lending corporations, secured equity lenders, law

firms, title insurers, consulting firms, and appraisal services corporations. NHEMA membership includes entities that are currently licensed by the Bureau of Financial Institutions, Virginia State Corporation Commission, to conduct business in the Commonwealth of Virginia, and that also qualify as housing creditors under the Parity Act, 12 U.S.C. §§ 3801–06, and are thus subject to its provisions.

The Parity Act was passed by Congress in 1982 in order "to eliminate the discriminatory impact ... [that federal] regulations have upon nonfederally chartered housing creditors and provide them with parity with federally chartered institutions. . . ." 12 U.S.C. § 3801(b). The Parity Act afforded housing creditors [1] the general authority to make, purchase, and enforce alternative mortgage transactions ("AMTs"). 12 U.S.C. § 3803. An AMT describes a residential-based loan or credit sale in which the lender may raise the interest rate, renegotiate the finance charge, or implicitly adjust the mortgage rate by allowing debt to mature faster than anticipated in the original amortization schedule.[2]

The Parity Act's provision that all housing creditors have general authority to make, purchase, and enforce AMTs applies only to transactions made in accordance with regulations issued by the Director of the Office of Thrift Supervision ("OTS") governing federal savings and loan associations. 12 U.S.C. § 3803(a)(3). The Director of the OTS has rulemaking authority pursuant to 12 U.S.C. §§ 1463(a) and 1464(a) to regulate federally chartered sav-

ings and loan organizations. The Director of the OTS has given savings and loan organizations federal rights to charge prepayment penalties without regard to state laws and has ruled that state laws regulating prepayment penalties are preempted. 12 C.F.R. §§ 560.2(a), (b)(5).

The Parity Act includes a preemption provision which states that an AMT "may be made by a housing creditor in accordance with this section, *notwithstanding any State constitution, law, or regulation.*" 12 U.S.C. § 3803(c) (emphasis added). Congress expressly allowed each state the opportunity to opt out of the Parity Act's preemption provision between October 15, 1982 and October 15, 1985 by enacting, or adopting by referendum or constitutional amendment, a new law, stating explicitly and by its terms that the state did not want the Parity Act to preempt state laws regarding AMTs. 12 U.S.C § 3804. During this time period, the Commonwealth of Virginia did not opt out of the Parity Act's preemption provision and did not in any way indicate that it wished Virginia state laws to govern AMTs instead of the federal Parity Act.

The Virginia General Assembly recodified statutes limiting prepayment penalties in 1987. Sections 6.1–330.83 and 6.1–330.85 of the Code of Virginia limit the amount of prepayment penalties that can be charged to two percent of the prepayment amount and forbid any penalties when the prepayment is due to refinancing with the same lender or to default. These code sections do not reference the Parity

---

**1.** The Parity Act defines a "housing creditor" in relevant part as "any person who regularly makes loans, credit sales, or advances secured by interests in properties ... or any transferee of them." 12 U.S.C. §§ 3802(2)(C)–(D).

**2.** An alternative mortgage transaction "means a loan or credit sale secured by an interest in residential real property, a dwelling, all stock allocated to a dwelling unit in a residential cooperative housing corporation, or a residential manufactured home ... (A) in which the interest rate or finance charge may be adjusted or renegotiated; (B) involving a

fixed-rate, but which implicitly permits rate adjustments by having the debt mature at the end of an interval shorter than the term of the amortization schedule; or (C) involving any similar type of rate, method of determining return, term, repayment, or other variation not common to traditional fixed-rate, fixed-term transactions, including without limitation, transactions that involve the sharing of equity or appreciation; described and defined by applicable regulation." 12 U.S.C. § 3802(1). The quintessential alternative mortgage transaction is an adjustable rate mortgage.

Act and were recodified after the Parity Act's opt-out time had expired.

In an official newsletter distributed to Virginia mortgage and consumer finance licensees, SCC defendants announced or permitted to be announced that the Bureau of Financial Institutions of the Virginia State Corporation Commission believes that the Parity Act does not preempt Virginia statutory laws limiting prepayment penalties for AMTs. *Federal Preemption of Virginia's Prepayment Penalty Laws:*, Compliance Connection, April 1999, at 1 [hereinafter *Federal Preemption*]. This announcement stated:

> Bureau examiners will continue to cite violations of Virginia statutes relating to prepayment penalties. Licensees found in violation will be required to refund prepayment penalties collected, in excess of the state law limits. In addition, notification ... must be provided to current borrowers so they will be aware that any higher penalty cannot be enforced.... A copy of the notification must be made a part of the permanent loan file, and investors who have purchased loans providing for penalties in excess of the penalty set forth in the Virginia Code must be notified.

> In addition to possible revocation of license, such violations can be referred to the Attorney General's office for investigation pursuant to Virginia Code § 6.1–430.

*Federal Preemption* at 3.

## II. LEGAL ANALYSIS

### A. Preemption

The primary issue for determination involves preemption and specifically whether the Parity Act preempts Virginia laws regarding limits on prepayment penalties. Plaintiff argues that when Virginia failed to timely opt out of federal preemption of the Parity Act, and when state-chartered housing creditors comply with the list of federal regulations that the OTS deems appropriate for them to follow, they can avail themselves of express federal preemption under 12 U.S.C. § 3803(c) "not-

withstanding any State constitution, law or regulation." The plaintiff relies on an opinion issued by the OTS in 1996 that concluded that the Parity Act should be interpreted as preempting a Wisconsin state statutory restriction on prepayment penalties. Effect of Parity Act on Wisconsin Prepayment Penalty Statute, OTS Op. Chief Counsel, 1996 OTS LEXIS 19 (April 30, 1996). The plaintiff also relies on a rulemaking by the OTS which clarified that prepayment penalties are covered by the Parity Act. *See* 61 Fed.Reg. 50,951, 50,954, adopting new regulation 12 C.F.R. § 560.220 which identifies 12 C.F.R. 560.34 as a regulation applicable to AMTs. In addition, an opinion of the Maryland Attorney General has ruled the same as the OTS opinion. 82 Md.Op. Att'y Gen. No. 97–018 (August 19, 1997). In contrast, SCC defendants and the Virginia Attorney General argue that the Parity Act's preemption provision does not apply to Virginia's statutory prepayment penalty limits.

■ Simply stated, Congress gave the states a choice—the states could choose to be regulated by the federal regime under the Parity Act, or the states could choose to opt out of the preemption provision of the Parity Act and continue the state's own regime. 12 U.S.C. § 3804. Virginia did not opt out during the requisite time period, and only now objects to the federal regime because the OTS has clarified that prepayment penalties are covered by the Parity Act. This Court holds that the Parity Act preempts the Virginia laws that attempt to limit prepayment penalties.

The OTS states in both an opinion letter and a rulemaking that prepayment penalties are included in the preemption provision of the Parity Act. In 1996, the OTS clarified the analytical framework of the regulations affected by the Parity Act. The OTS amended 12 C.F.R. § 545.33(f) to include 12 C.F.R. § 560.34 which permits the use of prepayment penalties subject to terms of the loan contract, and recast 12 C.F.R. § 545.33(f) into the current 12 C.F.R. § 560.220 to restate the law al-

ready in existence since the Parity Act's adoption in 1982. Now, in those states that did not opt out under the Parity Act's opt-out provisions (including Virginia), housing creditors who comply with the OTS regulations listed in 12 C.F.R. § 560.220 (including the regulation permitting prepayment penalties) can rely on federal preemption under the Parity Act.

This 1996 rulemaking was predicted, supported, and its rationale explained by a 1996 OTS Opinion Letter. Effect of Parity Act on Wisconsin Prepayment Penalty Statute, OTS Op. Chief Counsel, 1996 OTS LEXIS 19 (April 30, 1996). In that letter, the OTS explained that federal preemption was necessary in order to prevent disadvantaging state housing creditors—Congress' express purpose in enacting the Parity Act. *Id.* The OTS noted that the proposed rulemaking (now enacted) was being proposed to eliminate potential confusion. "The practical effect of incorporating the OTS's permissive prepayment penalty provisions will be to confirm that no OTS restriction was intended by the omission of such provisions from § 545.33(f) [currently recast into 12 C.F.R. § 560.220]." *Id.* at n. 12.

Although the OTS did not clarify until 1996 that prepayment penalties were included under the Parity Act's preemption provision, this does not prevent the OTS's clear statement in 1996 from being effective and enforceable. In the Parity Act, Congress provided that state chartered housing creditors may make, purchase, and enforce AMTs if they comply with "regulations ... issued by the Director of the Office of Thrift Supervision for federally chartered savings and loan associations, to the extent that such regulations are authorized by rulemaking authority...."

12 U.S.C. § 3803(a)(3). This direction implies no temporal limit on rulemaking as it applies to state chartered housing creditors. Furthermore, the creation of any limitation of the type suggested by SCC defendants [3] would defeat the stated purpose of the Parity Act by having regulations applicable to state and federally chartered housing creditors diverge over time rather than remaining in parity. Finally, the legislative history reveals that these regulations were subject to amendment by the agency. S.Rep. No. 97–463, at 55 (1982). Congress noted its expectation that "any future amendments that the agencies make to regulations that are within the scope of this title will conform to the objectives of this title." *Id.*

The 1996 OTS opinion and regulations state that the Parity Act preempts state statutes purporting to limit prepayment penalties. In *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the Court stated that "[f]ederal *regulations* have no less preemptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." *Id.* at 153–54 (emphasis added). The Supreme Court described the two-prong inquiry as (1) whether the federal agency has expressed an intent to preempt state law, and if so, (2) was this within the authority of the agency. *Id.* Since the OTS expressed an intent to preempt state law with regard to prepayment penalties, the inquiry turns to whether the OTS had authority to issue this regulation. The Parity Act gave the Director of the OTS authority to issue regu-

---

**3.** Defendants assert that within sixty days, the OTS was permitted to create a *one-time* list of matters that are preempted by the Parity Act. Defendants suggest that since the OTS did not do this and did not list prepayment penalties as preempted, then states may regulate this area. Defendants refer to the language in the note under 12 U.S.C. § 3801: "Within sixty days of the enactment of this title [October 15,

1982] ... the Federal Home Loan Bank Board [predecessor to the OTS] shall identify, describe, and publish those portions or provisions of their respective regulations that are inappropriate for (and thus inapplicable to), or that need to be conformed for the use of, the nonfederally chartered housing creditors to which their ... regulations apply...."

lations "to the extent that such regulations are authorized by rulemaking authority...." 12 U.S.C. § 3803(a)(3). Turning to 12 U.S.C. § 1462a(b)(2), the Director of the OTS is given authority to "prescribe such regulations and issue such orders as the Director may determine to be necessary for carrying out this chapter and all other laws within the Director's jurisdiction." Thus, the OTS had proper authority to issue this regulation, thus satisfying the second prong of the inquiry set forth in *de la Cuesta*.

■ Both the 1996 OTS opinion and the OTS regulatory construction of the Parity Act are entitled to deference under the principles set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron*, the Supreme Court announced a two-part test for deference to a federal agency's interpretation of a statute. *Id.* First, the reviewing court inquires whether the plain language of the statute addresses the precise issue. If so, that is the end of the matter because courts as well as agencies must give effect to the unambiguously expressed intent of Congress. *Id.* If, however, the statute is silent on the question, the agency's interpretation will be upheld if it is a permissible construction of the statute. *Id.* The Parity Act on its face displaces state law restricting the making, purchasing, and enforcement of AMTs when the AMTs are made in accordance with those OTS regulations that are made applicable to state chartered housing creditors. Additionally, to the extent that any such preemption is thought controversial as applied to prepayment penalties, the OTS' determination that the Parity Act does preempt these state laws is entitled to deference because it is a reasonable agency interpretation of the Parity Act. *Id.*

In a recent Supreme Court decision, the Court further emphasized the deference it would pay to agency interpretation of ambiguous terms in statutes. In *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996),

the Court held that it would defer to agency interpretation even when the opinion came 100 years after the statute—"neither antiquity nor contemporaneity with the statute is a condition of validity." *Id.* at 740, 116 S.Ct. 1730. The Court explained that it "accord[s] deference to agencies under Chevron ... because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Id.* at 740–41, 116 S.Ct. 1730. Thus, in accordance with this logic, the 1996 OTS rulemaking is entitled to deference and the preemption of state laws limiting prepayment penalties is a decision Congress intended to be left to the OTS.

In conclusion, Congress gave the OTS authority in the Parity Act to issue regulations "to the extent that such regulations are authorized by rulemaking authority...." 12 U.S.C. § 3803(a)(3). The OTS used that delegated authority to issue a rulemaking in 1996 that clarified that state regulation of prepayment penalties are preempted by the Parity Act. 12 C.F.R. § 560.220 (referencing 12 C.F.R. § 560.34). Thus, sections 6.1–330.83 and 6.1–330.85 of the Code of Virginia are preempted by the Parity Act.

### B. Remaining Issues

#### 1. Laches

■ Plaintiffs are not in laches. "[T]he affirmative defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *New Jersey v. New York*, 523 U.S. 767, 118 S.Ct. 1726, 1748, 140 L.Ed.2d 993 (1998) (citations omitted). In this case, there is no lack of diligence by plaintiffs and no prejudice to SCC defendants. Moreover, a lawsuit filed in June, shortly after the Bureau of Financial Institutions' April announcement that the Pari-

ty Act does not preempt Virginia law, is not untimely.

## 2. Ripeness

■ Plaintiff's claim is ripe for adjudication. The Supreme Court has expressly stated that federal preemption of contrary state laws presents pure questions of law ripe for adjudication through a motion for summary judgment. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 365, 376, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (reinstating trial court's grant of summary judgment because "federal law has preempted the field of union representation and its obligation to its membership"). Here, the underlying dispute focuses on the preemptive effect of the Parity Act on Virginia laws limiting prepayment penalties on all AMTs made, purchased, and enforced in Virginia. The dispute is thus ripe for adjudication.

## 3. Standing

■ NHEMA has standing to sue on behalf of its members. NHEMA's members are housing creditors subject to the Parity Act who are suffering or who will suffer injury from the enforcement of penalties announced in the Bureau of Financial Institutions of the Virginia State Corporation Commission's official newsletter for their lawful exercise of federal rights as violations of sections 6.1–330.83 and 6.1–330.85 of the Code of Virginia. Whenever a state appears willing to enforce an unconstitutional statute against those subject to it, then there is standing to challenge that law either by those subject to it or through their national trade organization. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In addition, the law in the Fourth Circuit is clear that the threat of prosecution under an unconstitutional statute establishes such injury. *Mobil Oil Corp. v. Attorney General of Commonwealth*, 940 F.2d 73 (4th Cir.1991), *cert. denied sub nom. Virginia Gasoline Marketers, Automotive Repair Ass'n, Inc. v. Mobil Oil Corp.*, 513 U.S. 1148, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995). In this case, the threat of prosecution was documented in the Bureau of Financial Institutions' announcement. Thus, NHEMA has standing to bring this claim.

## 4. Federally Enforceable Right

■ The plaintiff has a federally enforceable right under 42 U.S.C. § 1983. Under the three-part test in *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the plaintiff has a federally enforceable right under § 1983 if: (1) its members are intended beneficiaries of the Parity Act, (2) Congress intended the Parity Act to be a binding obligation, and (3) the plaintiff's interest is not so vague that it is " 'beyond the competence of the judiciary to enforce.' " *Id.* (citation omitted). This test is satisfied here because (1) nonfederally chartered housing creditors belonging to NHEMA are intended beneficiaries of the Parity Act, (2) the Parity Act creates a present right to be free of state law, and (3) the judicial remedies being sought are traditional and well established.

## 5. The Tenth Amendment

■ Although the Tenth Amendment is a safeguard against federal intrusion into areas traditionally regulated and supervised by the states, it does not apply here to AMTs and limits on prepayment penalties because consumer protection is not an area traditionally regulated solely by states. The United States Constitution grants to Congress the power "to regulate Commerce ... among the several States" and also to "make all Laws which shall be deemed necessary and proper for carrying into Execution the foregoing Power[ ]. . . ." U.S. Const. Art. I, § 8, cls. 3 & 18. The Supreme Court has approved "any number of federal statutes enacted under the commerce power that [effectively] pre-empt particular exercises of state police power." *Hodel v. Virginia Surface Mining and Reclamation Ass'n., Inc.*, 452 U.S. 264, 292, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (citations omitted). The Supreme

Court expressly rejected arguments that Congress invades subject matters purportedly "reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces the States' exercise of their police powers." *Id.* at 291, 101 S.Ct. 2352 (citations omitted).

In enacting the Parity Act, Congress exercised its plenary Commerce Clause powers. Banking constitutes a recognized form of interstate commerce, *United States v. Citizens and S. Nat'l Bank*, 422 U.S. 86, 91, 95 S.Ct. 2099, 45 L.Ed.2d 41 (1975), and loans secured by interests in real property constitute a recognized form of banking. Additionally, the legislative history acknowledges that AMT financing "is essential to the maintenance of an adequate supply of housing credit for the Nation. . . ." S.Rep. 97–463, at 54 (1982).

In addition, consumer protection in borrowing and lending is not an area traditionally reserved to the states free of federal regulation. *See, e.g.* Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a *et seq.*, the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 *et seq.* These statutes provide crucial substantive and legal protections for consumers nationwide in large part because Congress clearly expressed its intent, as it did in the Parity Act, that federal safeguards preempt state law regulating the same subject area. *See, e.g.,* RESPA Reg. X, 24 C.F.R. § 3500.13, 12 U.S.C. foll. § 2617; 15 U.S.C. § 1681t (Fair Credit Reporting Act); 15 U.S.C. § 1610 (Truth in Lending Act); and 15 U.S.C. § 1692n (Fair Debt Collection Practices Act).

Thus, because the borrowing and lending of money is commerce that falls within Congress' broad commerce power, then this area is not clearly reserved to the states under the Tenth Amendment. Instead, when the power is delegated, as it is here through the Commerce Clause, then the power of Congress is plenary and it can act to the exclusion of laws of the states.

### 6. Virginia Public Policy

While Virginia's public policy in favor of consumer protection is admirable, the sections of the Virginia Code limiting prepayment penalties cannot be enforced because they are preempted by federal law. Congress has adopted a different policy premised on the belief that consumers are better off if federal standards apply in states that did not opt out of the Parity Act between 1982 and 1985. 12 U.S.C. § 3801(a)(2). Further, Congress' less paternalistic policy is meant to benefit consumers instead of limiting their options. Rather than limiting the amount of credit available to consumers, the federal regime permits additional credit to be available to consumers in accordance with market regulation, thus giving greater choice and greater credit.

### III. CONCLUSION

For all of these reasons, the Court grants plaintiff's motion for summary judgment and denies both SCC defendants' and the Attorney General's motions for summary judgment. The Court permanently enjoins defendants from enforcing their announced position that the Parity Act does not preempt Virginia state law limiting prepayment penalties on alternative mortgage transactions.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Court GRANTS plaintiff's motion for summary judgment, DENIES SCC defendants' motion for summary judgment, and DENIES the Attorney General, Intervenor–Defendant's motion for summary judgment. The Court permanently ENJOINS defendants from enforcing their announced position that the Parity Act does not preempt Virginia state law limiting prepayment

penalties on alternative mortgage transactions.

It is so ORDERED.

Let the Clerk send a copy of this Order and the accompanying Memorandum Opinion to all counsel of record.