612 S.E.2d 772

Jeanette Sue CONRAD, Petitioner
Below, Appellant

v.

Delmer Wayne CONRAD, Respondent
Below, Appellee.

and

Jeanette Sue Conrad, Petitioner
Below, Appellee

v.

Delmer Wayne Conrad, Respondent
Below, Appellant.

Nos. 31747, 31748.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 12, 2005.

Decided Feb. 10, 2005.

John G. Ours, Petersburg, West Virginia, Attorney for Jeanette Sue Conrad.

James Wilson Douglas, Sutton, West Virginia, Attorney for Delmer Wayne Conrad.

PER CURIAM:

Jeanette Sue Conrad and Delmer Wayne Conrad have filed separate appeals from a decision of the Circuit Court of Grant County granting a divorce to the parties and deciding various issues of equitable distribution, alimony, and attorney fees. Upon thorough review of the assertions of both parties, the record, and the applicable precedent, we reverse the decision of the lower court and remand with instructions.

## I. Factual and Procedural History

Jeanette and Delmer Conrad were married on April 7, 1962. They separated in December 2000, and the final divorce order was entered by the Circuit Court of Grant County in December 2003. In determining issues of equitable distribution, the lower court held that benefits payable on a long term disability policy purchased with marital proceeds was the separate property of Mr. Conrad. Premiums on this policy had been deducted from Mr. Conrad's monthly salary from 1965 through 1993 at the rate of $40.00 monthly.[1]

In the final divorce order, the lower court also found that an annuity and a retirement account constituted marital property and divided those holdings equally between the parties, as valued at the date of divorce. On appeal, Mrs. Conrad contends that the annuity and retirement accounts should have been valued at the time of separation, rather than being assigned a value three years later at the time of the final divorce order. Further, she contends that she is entitled to one-half of the proceeds from those accounts received by Mr. Conrad from the date of separation to the date of divorce.

During the parties' separation, a temporary order had required Mr. Conrad to pay the mortgage on the family home of $680.00 monthly, in addition to $350.00 monthly in temporary alimony. When Family Court Judge Timothy Prentice entered an "Order Confirming Sale" of the marital home on December 19, 2002, he found that Mr. Conrad should be given credit for those payments of marital debt in the calculation of the equitable distribution. However, in the final divorce order, entered by Family Court Judge Jaymie Godwin Wilfong, Mr. Conrad was not given credit for payment of expenses related to the marital home. The lower court affirmed the order entered by Family Court Judge Wilfong, and Mr. Conrad asserts on appeal that he should have been permitted to offset payments of marital debt, such as mortgage payments, against any final equitable distribution award. He also asserts that he should have been permitted to receive credit for payment of an additional $27,523.08 in marital credit card debt and other marital obligations.

The final divorce order awarded Mrs. Conrad alimony of $750.00 monthly. On appeal, she contends that such award is insufficient. However, Mr. Conrad contends that such award is excessive, based upon his allegation that he will be forced to use the proceeds of his long term disability policy to pay the alimony and that he receives only approximately $2,900.00 monthly from the combination of the long term disability payment, social security, the annuity, and his retirement income.

Additionally, Mrs. Conrad contends on appeal that Mr. Conrad received a repayment of a $2,100.00 loan to the parties' daughter. Mrs. Conrad claims entitlement to one-half of that amount. Mrs. Conrad also contends that she should receive $8,000.00 in attorney fees due to the disparity in financial resources between the parties.

## II. Standard of Review

In syllabus point two of *Lucas v. Lucas*, 215 W.Va. 1, 592 S.E.2d 646 (2003), this Court held as follows:

> In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Further, in syllabus point one of *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996), this Court explained as follows: " 'A circuit court should review findings of fact made by a family law master only under a

---

1. Mrs. Conrad asserts that the parties jointly discussed the availability of long term disability insurance in 1965 and elected to purchase such insurance through the use of marital funds. In 1993, Mr. Conrad suffered a heart attack and was determined to be disabled from his employ-ment in the mining industry. In 1994, Mr. Conrad began receiving $2,778.00 per month from the long term disability insurance plan, and this was a primary source of income for the parties from 1993 through their separation in 2000.

clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.' Syllabus Point 1, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995)." In the syllabus of *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977), this Court stated: "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused."

### III. Discussion

### A. Long Term Disability Benefits

This Court is presented with the question of whether long term disability benefits based upon the disability of one spouse are separate or marital property. The lower court ruled that such benefits should be treated as separate property belonging to the disabled spouse. As Mrs. Conrad emphasizes in the case sub judice, however, the premiums to purchase such policy, in the amount of $40.00 monthly for almost thirty years, were paid from marital funds. Mrs. Conrad therefore contends that the benefits derived from such purchase should be shared equally by the divorcing spouses.

West Virginia Code § 48-1-233 (2001) (Repl.Vol.2004) defines marital property, in pertinent part, as follows:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property does not include separate

property as defined in section 1-238 [§ 48-1-238]; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

West Virginia Code § 48-7-101 (2001) (Repl. Vol.2004) provides for equal division of marital property, as follows: "Except as otherwise provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties."

■ In syllabus point three of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), this Court stated as follows:

W.Va.Code, 48-2-1(e)(1) (1986),[2] defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.

*In accord,* Syl. Pt. 1, *Koontz v. Koontz,* 183 W.Va. 477, 396 S.E.2d 439 (1990).

In *Huber v. Huber,* 200 W.Va. 446, 490 S.E.2d 48 (1997), this Court again recognized the legislative preference for classification as marital property and noted limited exceptions as follows:

In spite of the legislative preference for classifying property as marital, this Court has found some exceptions to the preference. One such exception is personal injury awards. This Court articulated in syllabus point 1 of *Hardy v. Hardy,* 186 W.Va. 496, 413 S.E.2d 151 (1991) that, "[t]o the extent that its purpose is to compensate an individual for pain, suffering, disability,

---

**2.** With statutory reorganization of 2001, the definition of marital property is now contained in

West Virginia Code § 48-1-233, as quoted above.

disfigurement, or other debilitation of the mind or body, a personal injury award constitutes the separate nonmarital property of an injured spouse." However, we also held that "economic losses, such as past wages and medical expenses, which diminish the marital estate are distributable as marital property when recovered in a personal injury award or settlement." *Id.*, 186 W.Va. at 501, 413 S.E.2d at 156. Additionally we stated in syllabus point 4 of *Hardy* that "[a] loss of consortium claim is the separate nonmarital property of the uninjured spouse."

200 W.Va. at 451, 490 S.E.2d at 53.

While this Court has not addressed distribution of proceeds from a long term disability policy which began paying benefits prior to the parties' separation, the issue of distribution of the proceeds from a long term disability policy has been extensively analyzed by courts of other jurisdictions. Many states have held that disability benefits are to be considered marital property unless a statutory provision specifically excludes such benefits from the marital estate. *See Mason v. Mason*, 319 Ark. 722, 895 S.W.2d 513 (1995) (holding that husband's employment disability benefits were marital property because they did not fall within the statutory exemption for personal injury benefits); *In re Marriage of Simon*, 856 P.2d 47 (Colo. App.1993) (holding that disability benefits from private disability insurance policy purchased with marital funds were marital property because such private insurance is not excluded from the statutory definition of marital property). Other states have found that disability benefits are marital property because the policy premiums were paid with marital funds. *See Dunn v. Dunn*, 35 Ark. App. 89, 811 S.W.2d 336 (1991) (holding that husband's disability benefits were marital property because the benefits constituted compensation in return for past services rendered); *VanderLeest v. VanderLeest*, 352 N.W.2d 54 (Minn.App.1984) (holding that disability annuity was marital property since husband's right to receive benefits resulted from employment during the marriage).

The majority of courts contemplating the proper classification of disability benefits have adopted an approach which focuses on the underlying purpose of the specific disability benefits at issue. Thus, benefits which actually compensate for disability are classified as separate property because they are personal to the spouse who receives them. However, where justified by the particular facts of the case, courts adopting this approach have separated the benefits into a retirement component and a true disability component, classifying the retirement component as marital property and the disability component as separate property. *See Villasenor v. Villasenor*, 134 Ariz. 476, 657 P.2d 889 (App.1982) (holding that husband's disability compensation had both disability component, deemed separate property, and retirement component, deemed community property); *Gay v. Gay*, 573 So.2d 180 (Fla. Dist.App.1991) (holding that disability benefits are separate property because they replace future income); *Hoffner v. Hoffner*, 577 So.2d 703 (Fla.Dist.App.1991) (holding that disability pension replaces future lost income and is separate asset); *Allard v. Allard*, 708 A.2d 554 (R.I.1998) (holding that disability pension is separate property of disabled spouse to extent it compensates for lost earning capacity but marital property to extent it represents the disabled spouse's retirement pay earned during the marriage).

In *Gragg v. Gragg*, 12 S.W.3d 412 (Tenn. 2000), the Tennessee court discussed the various approaches utilized by courts which have addressed this subject. The *Gragg* court concluded that "disability benefits from a private disability insurance policy acquired with marital funds during the marriage are not marital property subject to distribution upon divorce because the only purpose served by these benefits is income replacement." 12 S.W.3d at 419. However, while the *Gragg* court held that Mr. Gragg was entitled to treat the approximately $8,000.00 monthly disability income as separate property, the court affirmed an award to Ms. Gragg of $2,500.00 per month alimony.

In *Metz v. Metz*, 61 P.3d 383 (Wyo.2003), the Wyoming court explained that "we decline to adopt a hard and fast rule that all disability benefits are, or are not, marital property subject to distribution." 61 P.3d at

388. "Rather, the courts must make a determination on a case-by-case basis according to the particular facts giving careful consideration to the entire marital property and keeping an eye toward a just and equitable distribution." *Id.*

This Court is persuaded that the *Metz* approach is the better reasoned authority. While we refrain from stating a definite rule to be applied in all disability policy questions in divorce cases, we find that the circumstances of the present case indicate that treatment of the disability benefits as marital property most accurately reflects the intent of the parties at the time the disability policy was purchased. The evidence indicated that the parties discussed the issue of disability benefits and decided that marital funds of $40.00 per month for almost thirty years should be invested to secure their future. Furthermore, the disability benefits payable in this case are the major source of funds available to the parties.

Under the circumstances of the present case, we find that the long term disability benefits should be characterized as marital property. The present value of such disability benefits should have been determined as of the date of the parties' separation, and that value should have been divided equally between the parties. Thus, Mrs. Conrad is entitled to one-half of the proceeds from the long term disability policy received by Mr. Conrad since the separation. On remand, the lower court should reallocate funds from Mr. Conrad to Mrs. Conrad as necessary to achieve that result.

### B. Time of Valuation of Annuity and Retirement Accounts

In addressing the division of the annuity and retirement accounts which were correctly determined to be marital property, the lower court directed the division to be effective from the date of divorce rather than the date of separation. Mrs. Conrad contends on appeal that these holdings should be valued as of the date of separation. She maintains that Mr. Conrad received a total of approximately $33,094.00 from the annuity during the three years between the date of separation and the date of the divorce. She

further avers that the retirement account had accumulated interest at the rate of $1,000.00 per quarter between the separation and the divorce, for a total of approximately $12,000.00.

West Virginia Code § 48–7–104 (2001) (Repl.Vol.2004) provides that a court should "[d]etermine the net value of all marital property of the parties as of the date of the separation of the parties or as of such later date determined by the court to be more appropriate for attaining an equitable result." This Court has consistently recognized that the "separation date is important to a determination of marital property subject to equitable distribution" *Chafin v. Chafin,* 202 W.Va. 616, 505 S.E.2d 679 (1998).

Based upon the circumstances of the present case, we direct the lower court, on remand, to assess the present value of the annuity and retirement accounts as of the date of separation and to divide those holdings accordingly. Mrs. Conrad is entitled to one-half of the proceeds from the annuity and retirement benefits received by Mr. Conrad between the separation and the divorce. On remand, the lower court should reallocate funds from Mr. Conrad to Mrs. Conrad as necessary to achieve that result.

### C. Alimony

Both parties contend that the lower court incorrectly assigned alimony of $750.00 monthly to be paid to Mrs. Conrad. Mr. Conrad asserts that such amount is excessive, since he will have to utilize his social security, retirement, annuity.benefits, or long term disability benefits to pay the alimony requirement. Mrs. Conrad asserts that her income is extremely limited and that alimony of $750.00 per month is insufficient.

Our conclusion regarding equitable distribution of the long term disability benefits, as stated above, alters the need for an award of alimony. Based upon our determination that Mrs. Conrad is entitled to one-half of the long term disability benefits, as valued at the date of separation, we find that this resolution represents an equitable distribution of marital property and negates the necessity for alimony. We consequently direct the lower court to proceed upon remand as ex-

plained herein and to decline to order an award of alimony.

### D. Credit for Interim Payments of Marital Debt

The family court judge entered a temporary order in early 2002, directing Mr. Conrad to pay the mortgage of $680.00 per month on the marital home and temporary alimony of $350.00 monthly. Mr. Conrad contends that he also paid an additional $27,523.08 for other marital obligations such as federal and state income tax liabilities, maintenance on the marital home, consumer credit transactions, and homeowner's insurance obligations.

As explained above, Family Court Judge Prentice proposed an offset of $8,837.39 in the December 19, 2002, "Order Confirming Sale" of the marital residence. Through such offset, Mr. Conrad would have been permitted to recoup one-half of all amounts paid by him for the maintenance of the marital residence and one-half of the principal and interest paid on the mortgage of the marital residence.[3] Family Court Judge Wilfong did not adopt the offset in the final family court order. The lower court affirmed Judge Wilfong's determinations by order dated January 22, 2004.

Recoupment of payment of marital debt by one party prior to the ultimate division of marital property has often been permitted upon a final equitable distribution order. *See Jordan v. Jordan,* 192 W.Va. 377, 452 S.E.2d 468 (1994) (final allocation of marital debt permitted husband to recoup his expenses related to the marital home); *Kapfer v. Kapfer,* 187 W.Va. 396, 419 S.E.2d 464 (1992) (the parties agreed to allow husband to recoup from home sale all mortgage principal he paid on marital home after date of separation).

Upon review of this matter and reassessment of issues of equitable distribution specifically relating to the long term disability benefits, we find that Mr. Conrad is entitled to submit evidence upon remand of any interim payments of marital debt and maintenance on the marital home made between the separation and the divorce. Once an amount is determined by the lower court, Mr. Conrad should be entitled to offset one-half of that amount from the total owed to Mrs. Conrad as a result of the annuity, retirement, and disability payments. Mortgage and other home-related expenses made by Mr. Conrad during separation were marital debt and should be distributed as such during equitable distribution.

Furthermore, evidence regarding the repayment of an alleged loan to the parties' adult daughter should be provided, and Mrs. Conrad should be entitled to one-half of the amount of repayment if such amount was provided to Mr. Conrad.

### IV. Conclusion

In summary, we reverse the lower court's order and remand this matter for entry of an order assessing the value of the marital assets, including the long term disability policy benefits, as of the date of separation. Mrs. Conrad is entitled to one-half the proceeds of those holdings from the date of separation. Further, Mr. Conrad is entitled to offset from that payment one-half of any amounts he expended in service of the marital debt and maintenance of the marital home between the separation and the divorce.

We find that no award of alimony should be made, based upon the equal division of the other marital property. We are confident that this resolution represents an equitable distribution of assets.[4] The order

---

**3.** Specifically, the December 19, 2002, order proposed that Mr. Conrad receive credits for one-half of prior payments for real and personal property taxes; one-half of prior payment of real estate repairs; one-half of homeowners' insurance premiums; and one-half of the monthly real estate mortgage payment.

**4.** Although Mrs. Conrad requested an $8,000.00 attorney fee award based upon her financial circumstances, we decline to order payment of such

fee, based upon the distribution of marital property outlined in this opinion. West Virginia Code § 48-5-504(a). (2001) (Repl.Vol.2004) provides that a "court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action." We find that the parties' financial postures do not warrant an award of attorney fees to either party.

of the lower court is affirmed in all other respects.

Affirmed in part; reversed in part; and remanded with directions.