624 S.E.2d 548

**In re the Marriage of Martha Carol STATON, Appellant,**

v.

**Steven Edward STATON, Appellee.**

No. 32562.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 2005.

Decided Dec. 1, 2005.

Pat C. Fragile, Stacey L. Daniel–Fragile, Beckley, for the Appellant, Martha Carol Staton.

Carl W. Roop, Roop, Smith & Roop, Beckley, for the Appellee, Steven Edward Staton.

Justice DAVIS delivered the Opinion of the Court.

DAVIS, Justice:

Martha Carol Staton (hereinafter "Mrs. Staton"), appeals from an order entered June 30, 2004, by the Circuit Court of Raleigh County. By that order, the circuit court reversed the portion of an order of the family court that awarded Mrs. Staton an equitable share of Stephen Edward Staton's (hereinafter "Mr. Staton") police disability pension. The circuit court found that the family court was correct in classifying Mr. Staton's pension as a disability pension; however, the circuit court found that the family court erred in finding that the pension was a marital asset subject to equitable distribution. On appeal, Mrs. Staton argues that Mr. Staton's pension was a marital asset subject to equitable distribution. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, the decision of the circuit court is affirmed in part, reversed in part, and remanded for further consideration.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. and Mrs. Staton were married in 1986. Prior to their marriage, Mr. Staton began employment with the City of Beckley Police Department in 1974. During his tenure with the police department, Mr. Staton contributed seven percent of his salary to the City of Beckley Retirement Fund. This employment continued until Mr. Staton was deemed disabled due to a knee injury on March 12, 1996. During the marriage, the parties received almost $80,000.00 from the disability fund. Mr. and Mrs. Staton separated on April 26, 2000, and Mrs. Staton filed for divorce.

The family court entered an order on May 3, 2002, and ordered that "[Mrs. Staton] shall be awarded a portion of [Mr. Staton's] pension account in relation to the years of the marriage and that [Mr. Staton] shall cooperate in all respects to cause a Qualified Domestic Relations Order to be entered." Mr. Staton appealed to the circuit court. The circuit court remanded the matter by order entered August 14, 2002, for the family court to take evidence to determine whether the pension was a retirement pension or a disability pension. The circuit court stated that the "[family court order] does not state whether the pension is a disability pension or a retirement pension. [Mr. Staton's] objection claims that it is a disability pension, and that unlike a retirement pension, it is not subject to marital distribution and the entry of a [Qualified Domestic Relations Order]." The circuit court reasoned that if the pension was to compensate Mr. Staton for future lost wages, then it was separate property and not subject to distribution. The circuit court directed:

> Upon remand of this issue, the family court will take such evidence as it deems necessary to ascertain whether [Mr. Staton's] pension is a disability pension or a retirement pension. If it is found to be a disability pension, the payments received during marriage will be deemed to have been distributed with the parties's (sic) marital assets as determined at the time of separation. With respect to future payments, the family court will determine whether those payments compensate [Mr. Staton] for lost future income. If so, the payments are separate property and the value of the disability pension is not subject to marital distribution. If, however, the family court finds that any portion of the future payments are intended to restore a lost or damaged marital asset, such portion would be a marital asset subject to distribution.

> If upon these principles the family court finds that [Mr. Staton's] disability pension is not subject to distribution as a marital asset, the future income he derives from the pension should be included in the income upon which child support and spousal support shall be calculated. If, however, the family court finds that all or part of the disability pension is subject to marital distribution, the family court must calculate the portion of his future payments that constitutes marital property, and only the remainder will be deemed part of [Mr. Staton's] income for the purposes of the calculation of child support and spousal support.

> If the disability pension is not marital property, it is not subject to a [Qualified Domestic Relations Order] or to any further attention. If it is partly marital and partly nonmarital property, it is subject to a [Qualified Domestic Relations Order] only as to the portion that is marital property, if the administration of the disability pension is such that only a part of it can be subjected to a [Qualified Domestic Relations Order]. If the family court finds that it is partly marital and partly nonmarital, and that the fund from which payments are made cannot be segregated for [Qualified Domestic Relations Order] purposes, the family court may calculate the portion of each future payment that constitutes marital property, and the remainder of each payment will be deemed [Mr. Staton's] income for the purposes of the calculation of child support and spousal support. Under that arrangement, [Mr. Staton] will pay a portion of each future disability payment as marital distribution, and a portion as child and/or spousal support.

On remand, a hearing was held on April 11, 2003, and the family court heard testimony from the distributor of the fund, and determined that "[Mr. Staton] began receiving a disability pension on March 12, 1996[,] and continues to receive said pension." Further, the family court found that "on the date of being awarded the disability pension [Mr. Staton] was eligible for retirement with the City of Beckley and would have earned approximately sixty three percent (63%) of his pension and he became vested in such pension program in August of 1994."

The family court based these determinations on the testimony of Gary Sutphin, the City Treasurer and Recorder for the City of Beckley, West Virginia, who testified as to the distribution of the police pension fund.[1] Mr. Sutphin testified that there is no difference between the money collected by the City of Beckley Police Department for an employee's retirement pension versus an employee's disability pension. The money collected out of each check goes into a general fund that is available upon retirement. However, because Mr. Staton was disabled, he was able to receive a disability award and to access the pension fund prior to reaching the age of retirement.

Mr. Sutphin also explained that retirement benefits are calculated based on the average of the three highest years of salary, and that salary can include payment for unused sick time, vacation time, comp time, and overtime. He further espoused that disability benefits are determined based on sixty percent of the salary at the time of the disability, and do not include any buyback of unused benefits. The disability benefits are eligible for cost of living increases. It was further explained by Mr. Sutphin that retirement pensions are based on years of service and age; whereas, disability pensions are based on injury and illness.

The record reveals that Mr. Staton, at the time of his disabling injury, had worked long enough to meet the years of service component of his retirement. However, while he was vested in his retirement, he had not met the age requirement to begin drawing a full retirement. Because he was not yet able to draw his retirement, Mr. Staton exercised his right to draw disability benefits, which have no age prerequisite. Based on evidence taken from Gary R. Sutphin, City Treasurer and Recorder of Beckley, West Virginia, the family court found that "the disability pension was a replacement of lost wages and future lost wages on behalf of [Mr. Staton]." The family court directed that the disability pension be subjected to a marital distribution.

Mr. Staton appealed, and the circuit court found in its June 30, 2004, order that the pension was correctly classified as a disability pension by the family court; however, the circuit court further found that the family court erred in concluding that it was a marital asset subject to equitable distribution. The circuit court reasoned that "a pension that functions as compensation for a disability or injury is separate property, but a pension that functions as a retirement pension (deferred compensation) is marital property.... The evidence received by the Family Court with respect to the pension plan for policemen of the City of Beckley indicates, however, that the pension received by [Mr. Staton] is purely a disability pension." Therefore, the circuit court determined that the portion of the family court's order subjecting the disability pension to equitable distribution was in error.

Mrs. Staton appeals to this Court and argues that the pension was marital property. She avers that the disability pension was disbursed from funds that Mr. Staton paid into during the marriage, thereby creating an asset from the work of Mr. Staton. Therefore, Mrs. Staton contends that she is entitled to an equitable distribution of the funds. Both parties have requested their attorneys' fees and costs.

---

1. The parties did not designate the video of the April 11, 2003, remand hearing as part of the record. However, we exercised our right to take judicial notice of the record and requested a video copy to review prior to making our decision. *See, e.g.,* Syl. pt. 2, *State ex rel. County*

*Court of Cabell County v. Battle,* 147 W.Va. 841, 131 S.E.2d 730 (1963) ("Matters not contained in the record of the case cannot be considered by this Court in the disposition of the case unless it is such matter as comes within the classification of Judicial notice.").

## II.

### STANDARD OF REVIEW

The standard of review with which we approach this matter has been explained as follows:

> In reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004). *See also* Syl. pt. 2, *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003) ("In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review."). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

The sole issue for resolution on appeal is whether disability pension benefits are separate or marital property. Mrs. Staton argues that the pension was a marital asset

subject to equitable distribution. Mr. Staton argues that a disability award should be treated as a personal injury award and is, therefore, separate property. He expands his argument by alleging that, to the extent that the payment replaces past lost wages and compensates for past medical expenses, it is marital property. However, to the extent the payment compensates for future post-separation lost income, it is separate property.

In a divorce proceeding, subject to some limitations, all property is considered marital property. "Except as otherwise provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties." W. Va. Code § 48–7–101 (2001) (Repl.Vol.2004). Our case law also recognizes a preference for categorizing property as marital property. " 'W. Va.Code, 48–2–1(e)(1) (1986) [W. Va. Code § 48–1–233 (2001) (Repl.Vol.2004) ],[2] defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.' Syl. pt. 3, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990)." Syl. pt. 1, *Koontz v. Koontz,* 183 W.Va. 477, 396 S.E.2d 439 (1990) (per curiam).

Despite the preference of earmarking property as marital property, certain properties are characterized as separate property.[3] " 'To the extent that its purpose

---

2. W. Va.Code § 48–2–1(e)(1) was recodified as W. Va.Code § 48–1–233 (2001) (Repl.Vol.2004), and defines marital property, in pertinent part, as follows:

> (1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital

> property does not include separate property as defined in section 1–238 [W. Va.Code § 48–1–238]; and

> (2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

3. W. Va.Code § 48–1–237 (2001) (Repl.Vol.2004) states:

> "Separate property" means:

is to compensate an individual for pain, suffering, disability, disfigurement, or other debilitation of the mind or body, a personal injury award constitutes the separate nonmarital property of an injured spouse.' Syl. Pt. 1, *Hardy v. Hardy*, 186 W.Va. 496, 413 S.E.2d 151 (1991)." Syl. pt. 2, *Huber v. Huber*, 200 W.Va. 446, 490 S.E.2d 48 (1997). Further, "[a] loss of consortium claim is the separate nonmarital property of the uninjured spouse.' Syl. Pt. 4, *Hardy v. Hardy*, 186 W.Va. 496, 413 S.E.2d 151 (1991)." Syl. pt. 3, *id.* However, "[e]conomic losses, such as past wages and medical expenses, which diminish the marital estate are distributable as marital property when recovered in a personal injury award or settlement." Syl. pt. 2, *Hardy*, 186 W.Va. 496, 413 S.E.2d 151.

This Court, in *Conrad v. Conrad*, 216 W.Va. 696, 612 S.E.2d 772 (2005) (per curiam),[4] recently discussed the issue of long-term disability benefits and whether such proceeds are properly characterized as separate or marital property. In that case, this Court found that the long term disability benefits were marital property. This determination was based, in large part, on the fact that the parties had a specific conversation about the need to secure their future. Toward that end, the parties in *Conrad* decided jointly to apply for such benefits and paid the premiums on a monthly basis for thirty years. In *Conrad*, the receipt of long-term disability benefits began prior to the parties' separation and was secured through premiums paid during the marriage from marital funds.

■■■ We reasoned that

> (1) Property acquired by a person before marriage;
> (2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;
> (3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;
> (4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;
> (5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or

[t]he majority of courts contemplating the proper classification of disability benefits have adopted an approach which focuses on the underlying purpose of the specific disability benefits at issue. Thus, benefits which actually compensate for disability are classified as separate property because they are personal to the spouse who receives them. However, where justified by the particular facts of the case, courts adopting this approach have separated the benefits into a retirement component and a true disability component, classifying the retirement component as marital property and the disability component as separate property.

*Conrad*, 216 W.Va. at 700, 612 S.E.2d at 776 (internal citations omitted). Therefore, we previously discussed and now specifically hold that benefits that actually compensate for disability are separate property because such monies are personal to the spouse who receives them. In some cases, benefits will need to be separated into a retirement component and a true disability component, classifying the retirement component as marital property and the disability component as separate property. Further, in *Conrad*, we stated that there is no "hard and fast rule that all disability benefits are, or are not, marital property subject to distribution.... Rather, the ... determination [must be made] on a case-by-case basis according to the particular facts[,] giving careful consideration to the entire marital property and keeping an eye toward a just and equitable distribution." *Id.*, 216 W.Va. at 700–01, 612 S.E.2d at 776–77 (quoting *Metz v. Metz*, 61 P.3d 383 (Wyo.2003)).

> (6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

**4.** In the present case, the final order was issued by the circuit court on June 30, 2004. Therefore, neither the family court nor the circuit court had the benefit of this Court's discussion contained within the *Conrad* case. However, the parties' appellate briefs were filed with this Court in June and July 2005, after this Court's *Conrad* opinion. Neither party cited to or discussed this opinion.

In the case presently pending before this Court, the parties did not decide to jointly apply for the disability benefits. Rather, seven percent of Mr. Staton's pay was automatically withheld from his monthly income. The record shows that Mr. Staton suffered an injury and was disabled from his job. Because of his disability, he was able to access the police pension fund earlier than he could have for retirement purposes. Under these circumstances, we find that the family court and the circuit court were correct in their determination that Mr. Staton received a disability award. While this is money that would have been earmarked for retirement and was in essence deferred compensation, the fact that it was disbursed as disability money changed the manner in which it was calculated and distributed by the pension fund. However, the fact that Mr. Staton received a disability award from the police pension fund does not preclude him from subsequently receiving a retirement award from the same fund.

During oral argument before this Court, Mr. Staton's attorney argued that his client was receiving a disability award and that it would convert to a retirement pension upon his client's retirement. Mr. Staton's counsel, also during oral argument before this Court, stated that the issue of the disbursement of the fund once it converted to retirement money was not addressed by the lower court, and provided no further explanation. It appears counsel for Mrs. Staton agrees with this proposition because, during oral argument before this Court, he stated that Mrs. Staton would receive the same percentage of

disbursement once it converted from disability to retirement.

■ While it is clear that Mr. Staton is receiving a disability award, it is also clear, based on the arguments of counsel before this Court, that Mr. Staton's disability benefit was capable of conversion to a retirement benefit at some future point in time.[5] Earlier, we recognized the possibility that some cases require apportioning of retirement benefits versus disability benefits. Under this scenario, Mrs. Staton is entitled to an equitable distribution of any monies from the police pension fund that are truly for retirement purposes; however, she is not entitled to a distribution of disability monies. Therefore, the circuit court's determination that the disability award constitutes only separate property is reversed, and remanded with instructions to take any evidence needed to determine at what point in time Mr. Staton was or is able to draw retirement benefits.[6] The lower court should then proceed to determine the net value of the retirement benefits as of the date of the parties' separation.[7] Mrs. Staton is then entitled to an equitable share of those proceeds based on the number of years of the parties' marriage.

In reaching this conclusion, we realize that the alimony award and the child support award may need to be adjusted. Mrs. Staton received a monthly alimony award of $550.00 beginning on November 1, 2001, and ending on October 31, 2008.[8] She also was awarded $672.91 per month in child support until the minor children reach the age of majority or until they complete secondary school. In calculating the amount of these awards, the

---

**5.** A review of the April 11, 2003, remand hearing before the family court was expected to reveal testimony from Gary Sutphin, the City Treasurer and Recorder, regarding the issue of the disability award converting to retirement benefits at a certain time. However, Mr. Sutphin was never questioned about this suggestion and never stated whether, in fact, the disability does convert to retirement, and if so, on what date.

**6.** The record revealed that Mr. Staton was employed in another job where his disability was not a factor in his job performance. The date on which Mr. Staton actually retires is not relevant in the determination of retirement benefits subject to equitable distribution. Because Mr. Staton had already met the years of service require-

ment of receiving retirement benefits, the only relevant question is on what date Mr. Staton would have also met the age component of the retirement pension and been able to draw his retirement. In this way, parties are precluded from working at other jobs indefinitely or electing disability benefits to thwart a spouse's entitlement to retirement benefits.

**7.** *See* W. Va.Code § 48–7–104 (2001) (Repl.Vol. 2004) ("[T]he court shall ... [d]etermine the net value of all marital property of the parties as of the date of the separation[.]").

**8.** The record before us does not reveal the reason for the specified termination date.

lower court included the amount of Mr. Staton's disability award in his monthly salary. On remand, the lower court is directed to determine the portion of the disability award that actually represents retirement money. Mrs. Staton is entitled to only an equitable distribution of the retirement money, and the retirement component should not be included in the disability portion that is properly included as part of Mr. Staton's monthly salary in determining alimony and child support obligations.

## IV.

## CONCLUSION

In summary, we affirm the lower court's determination that Mr. Staton was awarded a disability pension. We reverse the lower court's order that found the entire award was disability, and remand this matter for a determination of the date on which Mr. Staton became or will become eligible to draw his retirement pension. The lower court should assess the value of the retirement benefits as of the date of separation, and Mrs. Staton is entitled to her equitable distribution of any portion of the disability award that is retirement money. Further, the lower court is instructed to re-evaluate the alimony and child support awards based on any reductions in Mr. Staton's monthly salary when his retirement benefits are apportioned out of his monthly disability award. Further, we note that both parties have requested their attorneys' fees and costs.[9] This matter should also be addressed by the lower court, and it should exercise its discretion in making any awards.

Affirmed, in part; Reversed, in part; and Remanded, with instructions.

---

**9.** W. Va.Code § 48–5–504(a) (2001) (Repl.Vol. 2004) provides, in pertinent part, that "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action."