671 S.E.2d 727

**In re: The Marriage of: Shirley E. GROSE, Plaintiff Below, Appellee,**

v.

**John H. GROSE, Defendant Below, Appellant.**

**No. 33901.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2008.

Decided Nov. 6, 2008.

---

James Wilson Douglas, Sutton, Counsel for the Appellant.

Harley E. Stollings, Summersville, Counsel for the Appellee.

PER CURIAM:[1]

John H. Grose (hereinafter "Appellant") brings this appeal of the September 20, 2007, order of the Circuit Court of Nicholas County affirming the June 5, 2007, and June 26, 2007, orders of the Family Court of Nicholas County. The June 5 family court order directed that a portion of Appellant's pension benefits be divided with Appellant's former wife, Shirley E. Grose (hereinafter "Appellee"), in accordance with an August 6, 1990, equitable distribution order entered in relation to the couple's divorce. Appellant maintains that the circuit court should not have affirmed the family court's decision because it was based on the erroneous conclusion that any portion of his pension proceeds could be considered a retirement benefit. He further maintains that the pension he receives is a disability pension falling outside of the reach of the former spouse as marital property because it is a benefit arising from a work-related injury that he had sustained after the divorce was final. Additionally, Appellant contends that the circuit court should not have affirmed the family court's June 26, 2007, order awarding attorney fees to Appellee because that award was not supported by the evidence.

Appellee raises cross assignments of error alleging that the circuit court's affirmance in this case was wrong because the family court had improperly reduced the amount of the pension benefits due her by applying the principle of laches to her claim. Further, she maintains that the circuit court erred not only by upholding the award of attorney fees for an amount that was less than she incurred in proceeding on her claim in the

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

family court, but also by denying award of attorney fees in connection with defending the appeal before the circuit court.

Having fully examined the record available in this appeal with respect to the briefs and arguments and in consideration of the pertinent law, we find no error and the order of the circuit court is affirmed.

## I. Factual and Procedural Background

Appellant and Appellee were married in July 1964 and separated in January 1987. The marriage was dissolved by bifurcated divorce order entered on May 19, 1989. An August 6, 1990, order addressing equitable distribution of the marital property provided in pertinent part:

> 2. Any pension or retirement benefits which may be presently vested in the defendant[/Appellant], or which may in the future become vested in the defendant[/Appellant], are marital property to the extent that said benefits were earned or accrued during the period of time the parties were married to each other and living together, i.e. from the 11th day of July, 1964 to the 26th day of January, 1987. If and when any such benefits become vested in the defendant[/Appellant] or collected by him, the plaintiff[/Appellee] shall be entitled to a percentage of one-half of said benefits computed by applying a fraction in which the numerator is the amount of said benefits accrued during the time the parties were living together and in which the denominator is the amount of the benefits.

During the marriage, Appellant participated in a defined benefits pension plan with the United Mine Workers of America (hereinafter "UMWA") under its Health and Retirement Funds 1974 Plan. The plan provided that Appellant could qualify for full retirement benefits if he attained the age of 62 years and worked continuously in a union mine for at least ten years. At the time of the divorce and equitable distribution, Appellant had met the years of service qualification for retirement as he had 20.07 qualifying years of service credit, but he did not meet

the age criteria because in 1990 he was only 49 years old.[2]

On March 16, 1991, Appellant was injured in a mining accident. The accident occurred a year after the final equitable distribution hearing in the divorce. At that time, Appellant was 12 years away from the minimum retirement age of 62. Appellant applied for a disability pension also available through the UMWA Health and Retirement Funds 1974 Plan (hereinafter "1974 Plan"). He was subsequently declared permanently and totally disabled and was awarded a UMWA pension in May 1993, effective retroactively to April 1, 1991.

Appellee filed a petition for an accounting and a qualified domestic relations order (hereinafter "QDRO") on April 25, 2006, in order to begin receiving a distributive share of Appellant's pension pursuant to the equitable distribution order. Appellant responded with a motion to dismiss, arguing that his pension is a disability rather than a retirement pension. He maintained that Appellee was not entitled to share in the disability pension because the express language of the equitable distribution order only provided a distributive share of a pension that was "earned or accrued during the period of time the parties were married." He supported this argument by stating that his disability pension did not accrue until the mining accident occurred, which was clearly after the parties had divorced. He added that a disability pension is compensation for the work-related injury and a substitute for the loss of future earnings, unlike a retirement pension which is a benefit maturing at a certain age and after a person has worked a particular number of years.

In the family court, the parties had stipulated to evidence provided in correspondence dated January 25, 2007, from a special payments analyst with the UMWA Health and Retirement Funds. Also appearing in the record is a UMWA publication, UMWA 1974 Pension Plan, Summary Plan Description. Express reference is made to both the UMWA correspondence and publication in the June 5, 2007, family court order as follows:

2. Appellant's date of birth is January 21, 1941.

14. The letter from the UMW Health and Retirement Funds dated January 25, 2007 states at page 2 "... a Disability Pension is a retirement pension...."

15. From the 1974 Pension Fund Plan Summary appears the following:

A. The disability pension being paid to Mr. Grose is paid from the same account as a normal retirement pension would be paid from.

B. The disability pension being paid to Mr. Grose would never be converted to a normal retirement pension unless for some reason he was found to no longer be totally disabled.

C. The disability pension being paid to Mr. Grose will be paid to him for so long as he lives.

In relation to these findings, the family court judge concluded that Appellant's pension has both a disability and a retirement component and that the retirement component is marital property subject to distribution to Appellee.

The June 5, 2007, order then shows that the family court judge applied the formula set forth in the equitable distribution order to determine that 82% of the pension funds after Mr. Grose turned 62 was marital property. Appellee's share of this marital property was found to be 41%, which she was awarded along with back pay to the date of her April 2006 filing. It was explained in the family court order that the reason why the payment period did not begin to run as of Appellant's 62nd birthday was because the equitable distribution order did not place the burden on Appellant to notify his former spouse of the receipt of the payments. The lower family court thereafter found that the doctrine of laches precluded Appellee from receiving any of the retirement benefits paid prior to the date she filed her petition for accounting.

3. Appellant requested $3,881 in attorney fees and expenses; Appellee sought $3,949 for attorney fees and expenses.

4. In the course of his arguments regarding the nature of the pension at issue, Appellant also asserted that the family court did not have jurisdiction to rule on the property issues raised. He maintained that this issue was settled by this

Both parties had requested attorney fees in the family court. The record contains income, expense, bank and tax records for both Appellant and Appellee and detailed information substantiating the amount of attorney fees each side sought.[3] The June 26, 2007, family court order awarding Appellee $2,500 in attorney fees indicates that the judge made some comparison of the relative financial positions of the parties.

Appellant appealed to the circuit court for review of both orders. After hearing argument, the circuit court affirmed the actions of the family court. Subsequently, Appellant sought review in this Court, and the same was granted by order dated April 2, 2008.

## II. Standard of Review

It was established in the syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004), that when

"reviewing a final order entered by a circuit court judge ... [with regard to] a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*"

*Id.* at 475, 607 S.E.2d at 804.

We proceed with our examination of the assignment and cross-assignment of errors in this case with these standards in mind.

## III. Discussion

The parties' concerns fall into two broad areas: (1) whether the pension at issue is a disability pension; and (2) whether the lower courts made a proper award of attorney fees.[4] We will examine each of these areas separately, taking into consideration the relevant arguments raised by the parties.

Court's decision in *Segal v. Beard*, 181 W.Va. 92, 380 S.E.2d 444 (1989). We simply note that *Segal* was decided under the former family law master system. The office of family court judge was established and the law governing domestic relations law was recodified in 2001. *See* W.Va. Code Article 2A, Chapter 51 (family courts) and W.Va.Code Chapter 48 (domestic relations).

## A. Disability Pension

Appellant insists that the pension he receives is not distributable as marital property under the provisions of the equitable distribution order in this case because the benefits he receives are solely due to his disabling work-related injury which occurred after the divorce was finalized. He maintains that a disability pension is compensation for future lost earnings, is considered personal to the recipient and is not subject to equitable distribution unless the disability pension has a marital component. Appellant claims that the marital components this Court examined in the previous decisions of *Conrad v. Conrad*, 216 W.Va. 696, 612 S.E.2d 772 (2005), and *Staton v. Staton*, 218 W.Va. 201, 624 S.E.2d 548 (2005), are not present in his case. He distinguishes his situation from those under consideration in *Conrad* and *Staton* by pointing out that his disability coverage did not result from the couple deciding to secure such coverage during the marriage, was not acquired by the expenditure of marital funds or by means of wage withholding during the marriage, and no disability benefits were received anytime during the marriage. Based upon these factors, Appellant argues that the family court's decision to treat any of the pension proceeds as retirement benefits subject to equitable distribution was wrong and represents an abuse of discretion.

█ Although Appellant rightly notes that the facts in his case are different than those present in the *Conrad* and *Staton* cases, his argument fails to appreciate the true reason why an examination of facts in these type of cases is necessary. It was recognized in *Conrad* that the determination of whether disability benefits are marital property is dependent upon the particular facts and circumstances present in a given case. 216 W.Va. at 700–01, 612 S.E.2d at 776–77. As made clear in syllabus point four of *Staton*, the close examination of the facts in these situations is necessary to determine *the reason behind the payment of the benefits*.

Benefits that actually compensate for disability are separate property because such monies are personal to the spouse who receives them. In some cases, benefits will need to be separated into a retirement component and a true disability component, classifying the retirement component as marital property and the disability component as separate property. 218 W.Va. at 202, 624 S.E.2d at 549. *Cf. Fitzgerald v. Fitzgerald*, 219 W.Va. 774, 639 S.E.2d 866 (2006). The reason underlying the payment of benefits is not necessarily unchanging. Such was the case in *Staton*, where the pension at issue converted from a disability pension to a retirement pension.

█ The family court in the instant case followed the analysis set forth in *Staton*. The judge examined the facts and evidence in the case, which included a review of the provisions of the January 25, 2007, letter from the UMWA special payments analyst and the 1974 Pension Fund Plan Summary. From this review, the family court determined that those pension payments paid to Appellant between the injury date and the date he could have retired on his 62nd birthday were truly disability payments since their purpose was to compensate Appellant for wages lost from the date he became disabled until he reached the age of 62 and qualified for retirement. The family court then found that those pension benefits paid on or after Appellant's 62nd birthday are best characterized as retirement benefits.

The operation of the pension plan in the case sub judice does not identify the purpose of the pension benefits in clear-cut a fashion as did the pension plan examined in *Staton*. Nevertheless, we cannot say that the facts do not support the lower courts' conclusions that the purpose for the payments changed from a disability pension to a retirement pension at the time Appellant met the qualifications for retirement. It is a reasonable and fair conclusion that respects and balances the different reasons for payment of the benefits without "thwart[ing] a spouse's entitlement to retirement benefits." *Staton*, 218 W.Va. at 207 n. 6, 624 S.E.2d at 554 n. 6.

█ The family court further determined that Appellee's portion of the pension should be calculated from the date she filed her petition for an accounting and entry of a QDRO rather than the date of Appellant's 62nd birthday. The June 5, 2007, family

court order reflects the reasoning for this determination as follows:

12. The Court's order dated April 17, 1990 [equitable distribution order] places no burden upon the defendant to notify the plaintiff of his receipt of retirement benefits.

13. The doctrine of laches precludes the plaintiff from recovering any portion of the retirement benefits paid to the defendant at any time prior to the date she filed her petition for accounting, the same having been filed on the 25th day of April, 2006.

Appellee objects to this decision by cross-assignment of error. She maintains that the lower courts erred as a matter of law when it applied the doctrine of laches.

 This Court examined the doctrine of laches in the 1950 case of *Bank of Mill Creek v. Elk Horn Coal Corporation*, 133 W.Va. 639, 57 S.E.2d 736, wherein we stated that " 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.' *Harrison et al. v. Miller, Exec.*, 124 W.Va. 550, 21 S.E.2d 674 [675 (1942)]." 133 W.Va. at 655, 57 S.E.2d at 746–47. Laches is an equitable remedy which places the burden on the person asserting it to prove both lack of diligence by the party causing the delay and prejudice to the party asserting it. *See National Home Equity Mortg. Assn v. Face*, 64 F.Supp.2d 584 (E.D.Va.1999), *aff'd*, 239 F.3d 633 (4th Cir.2001), *cert. denied*, 534 U.S. 823, 122 S.Ct. 58, 151 L.Ed.2d 26 (2001). Both of these factors were demonstrated in the case now before us.

Nonetheless, Appellee asserts that the family court's decision to apply laches ignores the provisions of syllabus point two of *Bank of Mill Creek v. Elk Horn Coal Corporation*, which states: "Laches does not commence to run against a party complaining of a wrongful transaction of another until such complaining party has knowledge thereof, or knows facts sufficient to put him on inquiry with respect thereto." 133 W.Va. at 640, 57 S.E.2d at 739. She maintains that it was undisputed that she neither knew that Appel-

lant was receiving a retirement pension nor had information to inquire about a pension before filing her petition.

The language of the equitable distribution order quoted at the outset of this opinion [5] clearly places no duty of notification on Appellant in this regard. We also note that Appellee does not claim that she was somehow misled or unable to make an earlier inquiry regarding the nature of the benefits Appellant was receiving. We see no reason to invent a duty to notify, particularly under the circumstances presented in this case. After all, no one really "knew" whether any of the UMWA benefits received would be subject to the equitable distribution order as retirement benefits without judicial determination. Under these facts we cannot say that the lower court misapplied the law or erred in applying laches as an equitable mid-ground remedy.

B. Attorney Fees

Appellant next argues that the circuit court committed plain error by affirming the family court award of attorney fees to Appellee without the introduction of competent and persuasive evidence. This argument is at best disingenuous considering the evidence in the record before us. The record contains detailed and verified financial disclosures of both parties and an itemization of services supplied by each attorney.

Appellee raises two errors regarding award of attorney fees: (1) failure of the family court to award the full amount of attorney fees she requested; and (2) the circuit court's refusal to award her attorney fees for the costs associated with her appeal before that court.

 The award of attorney fees in domestic relations cases is reviewed under an abuse of discretion standard. We noted in the syllabus of *Landis v. Landis*, —— W.Va. ——, 674 S.E.2d 186 (2007), that

"[i]n divorce actions, an award of attorney's fees rests initially within the sound discretion of the family ... [court] and should not be disturbed on appeal absent

5. *See* Section I., *supra*.

an abuse of discretion. In determining whether to award attorney's fees, the family ... [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syllabus Point 4, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

Evident from the posture of the *Landis* case, these factors are equally relevant and applicable to proceedings stemming from, although following, the actual divorce.

■ The family court's order awarding attorney fees reflects that the court considered each party's ability to pay his or her own attorney fees and the relative financial conditions of the parties. We further observe that the fee statements submitted by each party's attorney were quite comparable. Although the family court order does not provide complete insight into the considerations of the judge regarding the financial conditions or reasonableness of the attorney fees charged, it does contain the findings that Appellant "has substantially more income than" Appellee and that Appellee "has a need for an award of attorney fees." While our review would be simplified if the entire reasoning process of the judge would have been reflected in the order, not meeting that ideal hardly represents an abuse of discretion when the order demonstrates that a comparison of relevant factors was made.

■ We likewise find no merit in Appellee's assertion that the circuit court erred by not awarding her attorney fees for defending the appeal to that court. The September 20, 2007, order of the circuit court affirming both family court orders has no provision whatsoever regarding award of attorney fees for the costs associated with the appeal. Having failed to object on the record to the circuit court's omission of addressing attorney fees relative to the appeal of the family court rulings, the matter was not properly developed or preserved for appeal to this Court.

*See* Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996) (stating rule with regard to preserving issues for appellate review).

## IV. Conclusion

Having completed our examination of all of the issues raised in this appeal and for the reasons set forth in this opinion, we affirm the September 20, 2007, order of the Circuit Court of Nicholas County.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.