# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Bruce C.,**
**Respondent Below, Petitioner**

**vs)  No. 18-0462** (Wayne County 14-D-073)

**Michelle C.,**
**Petitioner Below, Respondent**

**FILED**

**October 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Bruce C., by counsel Noel M. Olivero, appeals the order of the Circuit Court of Wayne County, entered on May 9, 2018, that affirmed a family court order awarding certain property to Respondent Michelle C. in the parties' divorce.  Respondent appears by counsel Krista Conway.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in 1993 and legally separated in 2013. The marital assets included a condominium in Florida that the parties purchased in 2011 for its proximity to Bruce C.'s family member. When the family court entered the parties' final divorce decree in January of 2016, it awarded full ownership of the condominium to Michelle C., with the proviso that if Michelle C. failed to secure financing within 120 days, the condominium would be sold and the net profit divided equally between the parties.

Bruce C. appealed the family court's final order on several grounds, including three related to the award of the condominium: that the family court failed to credit him for his payments on condominium-related expenses incurred after the parties' separation, that the family court failed to direct that he receive an offset if Michelle C.'s failure to obtain financing necessitated the sale of the condominium, and that the family court erred in awarding the condominium to Michelle C. despite both parties' expression of a different desired outcome.[1] With respect to the first and second

---

[1] Bruce C. requested that the family court allow him to purchase Michelle C.'s interest in the condominium. Michelle C. requested that the condominium be legally and physically partitioned and each party awarded half.

1

arguments, viewed by the circuit court as one, the circuit court remanded the matter for the family court's development of the record on expenses and payments related to the condominium. The circuit court denied Bruce C.'s appeal on the third condominium-related argument that challenged the award to Michelle C., citing the family court's discretion in the division of property.

Following remand, the family court awarded Bruce C. one-half of the condominium-related expenses from the date of separation through the date of the final hearing, specifically finding that it lacked jurisdiction to make an award for expenses incurred beyond that date. Bruce C. then appealed that family court order, which the circuit court addressed in an order entered on May 9, 2018. The circuit court clarified that the family court "retains jurisdiction where, as here, the issue of *Conrad*[2] credits is remanded to the family court following an appeal to the circuit court[,]" and the circuit court consequently found that Bruce C. was entitled to reimbursement for condominium-related expenses from the date of separation until the ultimate transfer of legal title to Michelle C. The circuit court accordingly adjusted the award of expenses.

On appeal, Bruce C. asserts three assignments of error. He argues, first, that the family court was required to make findings supporting its award of the condominium to Michelle C. Similarly, he argues in his second assignment of error that the family court was required to make findings supporting its disregard of the parties' suggestions concerning the condominium. Third, he argues that the family court failed to adjust Michelle C.'s equitable interest in the condominium in consideration of her accumulating debt for the post-separation condominium-related expenses. We review Bruce C.'s assignments of error as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

In his first and second assignments of error, Bruce C. argues that the family court is obligated to "set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted," according to West Virginia Code § 48-7-106. The argument as he states it suggests that our family courts should be admonished that each party is due an explanation regarding its determination on every discrete distribution from a marital estate.

West Virginia Code § 48-7-106, the section quoted above on which Bruce C. relies, defines the family court's responsibility in effecting the equitable distribution of property, as described in the encompassing Article 7. Concerning equitable distribution, we have instructed:

---

[2] The Court in *Conrad v. Conrad*, 216 W. Va. 696, 612 S.E.2d 772 (2005), discussed a potential credit to a party in divorce proceedings where that party has paid martial debt or maintained the marital home between the time of separation and the divorce.

"'Equitable distribution . . . is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [former] W.Va. Code, 48-2-32 [now W.Va. Code § 48-7-103].' Syllabus Point 1, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990)." Syl. Pt. 2, *Stuck v. Stuck*, 218 W.Va. 605, 625 S.E.2d 367 (2005).

Syl. Pt. 3, *Mulugeta v. Misailidis*, 239 W. Va. 404, 801 S.E.2d 282 (2017). These steps, per the clear directive first offered in *Whiting*, are those on which the family courts must focus their fact-finding. Evaluating Bruce C.'s broad argument that the family court failed to explain the award, we find no implication that the family court's order fell short of satisfying this standard. Bruce C. did not assert that the condominium was nonmarital, and there was thus no lack of factual determination on the first step. The family court's fifteen-page order meticulously set forth findings concerning the value of the condominium, the primary residence (awarded to Bruce C. in the final order), and a great deal more marital property, and Bruce C. has not challenged the facts underlying the family court's determination of those amounts. The second step, then, appears satisfied. Finally, Bruce C. has not asserted that the marital properties were not equally divided or that there was an unequal division that offended the considerations of West Virginia Code § 48-7-103, the section that *Whiting* specifically directs family courts to consider in the third step.[3] We

---

[3] West Virginia Code § 48-7-103 provides:

In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:
(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited to:
(A) Employment income and other earnings; and
(B) Funds which are separate property.
(2) The extent to which each party has contributed to the acquisition, preservation and maintenance or increase in value of marital property by nonmonetary contributions, including, but not limited to:
(A) Homemaker services;
(B) Child care services;
(C) Labor performed without compensation, or for less than adequate compensation, in a family business or other business entity in which one or both of the parties has an interest;
(D) Labor performed in the actual maintenance or improvement of tangible marital property; and
(E) Labor performed in the management or investment of assets which are marital property.

find that the family court made equitable distribution of the marital assets, and the circuit court did not err in its treatment of the final order.

In his final assignment of error, Bruce C. argues that Michelle C. has failed to make any condominium-related expense payments to Bruce C. since the parties' legal separation and that she, thus, owes Bruce C. more than the value of her equity in the condominium.[4] The family court, he argues, failed to consider this detail. The family court did not consider it, however, because Bruce C. did not raise it below.[5] Nor could he. Michelle C.'s "upside-down" financial status, if derived from a comparison of her equity in the condominium and her unpaid portion of the expenses, is the result of Bruce C.'s having been granted the very relief that he requested of the circuit court in the first instance. Bruce C. argued to the circuit court that the family court "fail[ed] to credit him for making the mortgage, insurance, utility, and [home owners' association] payments on" the condominium. The circuit court recognized this possibility, and remanded the question to the family court for development. From that factual development sprang the obligation that Bruce C. would now apply to diminish Michelle C.'s current equity. This circular application does not comport with our review of the issues as they were presented below, and we find no error.

For the foregoing reasons, we affirm.

Affirmed.

---

(3) The extent to which each party expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, including, but not limited to:

(A) Direct or indirect contributions by either party to the education or training of the other party which has increased the income-earning ability of such other party; and

(B) Foregoing by either party of employment or other income-earning activity through an understanding of the parties or at the insistence of the other party.

(4) The extent to which each party, during the marriage, may have conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties: Provided, That except for a consideration of the economic consequences of conduct as provided for in this subdivision, fault or marital misconduct shall not be considered by the court in determining the proper distribution of marital property.

[4] We expressly note that Bruce C. provides no citation to the appendix record on appeal, or other foundation, for this assertion, and is silent as to whether he has sought relief.

[5] "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999).

**ISSUED:** October 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison