# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Scott Alan Batt,**
**Petitioner**

**vs)  No. 12-0289** (Monongalia County 06-D-320)

**Mary Cathryn Batt,**
**Respondent**

**FILED**

June 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Scott Alan Batt, by counsel James Wilson Douglas, appeals the Circuit Court of Monongalia County's "Order Granting the Petitions for Appeal" entered on April 13, 2010, and "Order Denying the Petition for Appeal" entered on January 20, 2012. Respondent Mary Cathryn Batt, who is pro se on appeal, asserts cross-assignments of error from the same orders pursuant to Rule 10(f) of the Rules of Appellate Procedure.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in March of 1994, separated in July of 2006, and were divorced by the final divorce order entered by the Family Court of Monongalia County on December 31, 2008. Both parties appealed the final divorce order to circuit court, which by order entered on April 13, 2010, affirmed in part and reversed and remanded in part. After entry of additional orders by the family court, both parties again appealed to circuit court. In its order of January 20, 2012, the circuit court affirmed. We apply the following standard of review:

> In reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

In the appeal and cross-appeal, the parties raise a total of twenty assignments of error. However, there is extensive overlap in these assignments of error. In general, the parties raise

1

issues of allocation of custodial responsibility for their children, child support, spousal support, and credits to offset equitable distribution.[1]

## ALLOCATION OF CUSTODIAL RESPONSIBILITY

The parties have two minor children. Both parties presented testimony to the family court on the amount and type of care that they provided to the children during the marriage. Pursuant to West Virginia Code § 48-9-206(a), the general rule is that a court shall allocate custodial responsibility so that the proportion of custodial time the child spends with each parent approximates the proportion of time each parent spent performing caretaking functions for the child prior to the separation. After considering the evidence, the family court made a finding of fact that in the two-year period prior to the separation, the parties had been "roughly equal" caretakers of the children. The family court proceeded to order a schedule where the children are with Ms. Batt approximately sixty percent of the time and are with Mr. Batt approximately forty percent of the time (including overnight visits).

Both parties argue that this allocation was an abuse of discretion. Mr. Batt argues that he performed more than forty percent of the parenting before the separation, while Ms. Batt argues that Mr. Batt performed less than forty percent. The family court heard the testimony and was in a position to evaluate the credibility of the witnesses. After carefully considering the record on appeal and the parties' arguments, neither party has convinced us that the family court abused its discretion on this issue.

## CHILD SUPPORT

*Characterization of temporary support payments:*

Mr. Batt was ordered to pay Ms. Batt $7,000 per month during the pendency of the divorce proceedings. During a September 27, 2006, temporary hearing, the parties and the family court decided not to characterize this money at that time. Instead, the parties agreed that at some point in the future, the family court would decide whether this money was spousal support, child support, and/or an advance on equitable distribution. In the final divorce order, the family court concluded that all of this money was an advance on equitable distribution. The family court also found that Mr. Batt owed no child support. In the first appeal to circuit court, the circuit court found that those two rulings were in error. The circuit court reversed those rulings and remanded the case to the family court to calculate an award of child support for Ms. Batt and to determine how much of this $7,000 per month should have been categorized as child support.

Mr. Batt argues that the circuit court retroactively modified a child support award, which is generally prohibited by Syllabus Point 2, *Hayhurst v. Shepard*, 219 W.Va. 327, 633 S.E.2d 272 (2006). However, we disagree with Mr. Batt's characterization of the circuit court's ruling as

---

[1]The appendix record reflects that in 2011, Ms. Batt filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of West Virginia. On October 31, 2011, the bankruptcy court lifted the automatic stay to permit the lower courts and this Court to make final determinations about equitable distribution in this divorce case.

a "retroactive modification." These temporary payments had already been made. The reason that the payments were not characterized until later is that the parties had agreed to delay this decision. One of the possible characterizations was always that some or all of the money would be deemed to be child support. The family court ultimately made the decision on how to characterize the money, and the circuit court reversed that decision on appeal. Under these particular facts, we determine that this was not a retroactive modification.

*Calculating Mr. Batt's income for purposes of calculating child support:*

As set forth above, on April 13, 2010, the circuit court remanded this case to the family court for, inter alia, a calculation of Mr. Batt's child support obligation. During the marriage, the parties owned closely-held companies engaged in the business of real estate, including owning rental properties. Mr. Batt continued operating the businesses after the separation and divorce. During the marriage the businesses were very profitable, but the family court found unrefuted evidence that the businesses had been unprofitable in recent years.

Both parties assert several errors regarding the family court's determination of Mr. Batt's gross income for purposes of calculating his child support obligation. We will first address Mr. Batt's assigned errors, and then we will turn to Ms. Batt's assigned errors. West Virginia Code § 48-1-228(b)(7) sets forth how to calculate gross income from self-employment or the operation of a business, including the requirement of averaging income over a thirty-six month period:

> Income from self-employment or the operation of a business, minus ordinary and necessary expenses which are not reimbursable, and which are lawfully deductible in computing taxable income under applicable income tax laws, and minus FICA and medicare contributions made in excess of the amount that would be paid on an equal amount of income if the parent was not self-employed: Provided, That the amount of monthly income to be included in gross income shall be determined by averaging the income from such employment during the previous thirty-six-month period or during a period beginning with the month in which the parent first received such income, whichever period is shorter[.]

On November 5, 2010, the family court entered an order determining that during the pendency of the divorce, Mr. Batt had owed zero child support in 2006; $275 per month in 2007; and $352.65 per month in 2008. To calculate the 2007 and 2008 amounts, the court attributed the minimum wage to both parties.

In an order entered on September 30, 2011, the family court determined the amount of child support Mr. Batt owed after the divorce. This time, the family court did not attribute any income to the parties. The family court found that Mr. Batt had negative self-employment earnings in 2007 through 2010, and a small amount of interest income. However, the family court counted as income $136,909 in capital gains that Mr. Batt reported receiving in 2010 from the sale of real property. The family court found that Ms. Batt also had negative self-employment earning income, some business losses, and a small amount of interest income. The family court counted as income $39,068 in capital gains that Ms. Batt reported receiving in 2010 from the sale of real estate. After applying the child support formula, the family court concluded that Mr. Batt

3

owed zero child support for 2009 and $235.17 per month for 2010. This was affirmed by the circuit court in its January 20, 2012, order. When the family court made these calculations, the parties had not yet filed their 2011 tax returns, thus the family court was unable to calculate Mr. Batt's 2011 child support obligation.

First, Mr. Batt argues that the family court erred by not reducing his 2010 gross income by $104,140 in carry-forward net operating losses that his businesses suffered in 2008 and 2009 but that he had not been able to deduct until his 2010 federal tax return. Because Mr. Batt's businesses are limited liability companies, business income and losses are included on his personal income tax returns. Mr. Batt argues that West Virginia Code § 48-1-228(b)(7) provides for a reduction in gross income for lawfully deductible expenses. The circuit court rejected Mr. Batt's argument, finding that the family court had already considered these same losses when calculating Mr. Batt's negative self-employment earnings for 2008 and 2009. The circuit court found that to use the $104,140 in 2010 would be duplicative. We find no error in this reasoning.

Next, Mr. Batt argues that it was error to include his capital gains earnings in the calculation of his 2010 gross income. West Virginia Code § 48-1-228(c) provides that capital gains "may" be counted as gross income "[d]epending on the circumstances of the particular case[.]" Mr. Batt argues that this was a one-time sale of real estate that would not reoccur, and this was real estate that Mr. Batt had been awarded in equitable distribution. Upon a consideration of the parties' circumstances, the circuit court found no error, and neither do we. The family court also counted capital gains that *Ms. Batt* received in 2010 as part of her gross income for purposes of the child support formula. Moreover, in light of the parties' negative employment earnings in 2010, this money obviously was needed to support the children. Finally, the circuit court anticipated that the family court would be recalculating the child support award when the parties' 2011 tax returns became available. If Mr. Batt's 2011 gross income is substantially changed such that the amount of child support would be more than fifteen percent different, Mr. Batt could pursue a motion for modification pursuant to West Virginia Code § 48-11-105.

Mr. Batt argues that even if the family court correctly counted the capital gains as income in 2010, the family court abused its discretion in determining what amounts to use. He argues that the family court attributed only $39,038 in capital gains for Ms. Batt's sale of two undeveloped lots in the Windsor subdivision, while attributing $35,085 in capital gains for Mr. Batt's sale of just one undeveloped lot in the same subdivision. The circuit court found that during the family court's evidentiary hearing, Mr. Batt had failed to question the amount of capital gains that Ms. Batt was reporting, and it is unknown whether the lots are of the same size or value. Based upon a lack of information in the record, the circuit court could not find that the family court had abused its discretion. We agree.

Furthermore, Mr. Batt argues that the family court erred by ordering him to pay child support when he is unable to pay. He argues that he has had to borrow money from both business and personal assets to pay the court-ordered child support and spousal support. Ms. Batt responds, and argues in a cross-assignment of error, that Mr. Batt has manipulated his income to avoid paying child support. Ms. Batt asserts that the "shareholder loans" Mr. Batt took from his businesses should be counted toward his gross income because he has absolute control over these

closely-held businesses; he has the sole discretion to determine whether the money he takes from the businesses is categorized as a "salary" or as "loans"; and there are no documents reflecting that he has any obligation to repay the loans. Mr. Batt replies that there is no evidence that he has artificially reduced his income; to the contrary, the family court found there was unrefuted evidence from Mr. Batt's expert that the businesses have been unprofitable. Because we find the family court carefully considered the parties' respective incomes and capital gains when applying the child support formula, we find no abuse of discretion.

Finally, Ms. Batt asserts that the family court erred by not attributing significant income to Mr. Batt for the years 2009 and 2010. She argues that the family court disregarded evidence of Mr. Batt's earning capacity, specifically, that he previously earned $80,000 per year as a bank loan officer and he has three college degrees. She argues that no reasonable person in Mr. Batt's position would continue spending time on business ventures that have lost money for years, when he could obtain gainful employment for which he is qualified. In light of the entirety of the parties' circumstances, we cannot conclude that the family court committed clear error or an abuse of discretion. During the marriage, Ms. Batt reaped the rewards of these same business ventures when they were profitable. Furthermore, in its September 30, 2011, order, the family court was very clear when instructing the parties that they both needed to support their children. The family court warned that if Mr. Batt's businesses showed a loss for a third straight year in 2011, and Mr. Batt lacked other sources of income, then the family court would impute income to him going forward.

## SPOUSAL SUPPORT

At the time of their separation, both parties were self-employed. Through their closely-held companies, they owned real estate and operated rental properties. Mr. Batt argued that this was a short-term marriage, Ms. Batt inflated her expenses, Ms. Batt had potential rental income of $12,000 per year, and Ms. Batt had other available resources. Furthermore, Mr. Batt presented expert vocational testimony that Ms. Batt has the ability to earn wages of $58,594 per year. In the final divorce order, the family court attributed an annual income of $58,594 to Ms. Batt and awarded her rehabilitative spousal support of $3,000 per month for sixty months.

In the first appeal to circuit court, Ms. Batt argued that it was error to attribute this much income to her because she did not have full-time, gainful employment during the marriage and she lacks a college degree. She argued that Mr. Batt has a college degree and a law degree, controls all of the rental units, and that his previous employment as an accountant and bank loan officer proves that he has the capacity to earn a higher income than he now claims. Ms. Batt argued that although the parties completed a tax return(s) listing her salary as $50,000 from their family-owned businesses, this was a decision made by their accountant and no non-family business would ever pay that much for what was essentially clerical work that she performed.

The circuit court reviewed the evidence and the parties' arguments and concluded that "there is a basis for a nominal amount of" permanent rehabilitative spousal support. The circuit court did not decide what that amount should be. Instead, the circuit court ordered that the family court should retain jurisdiction and, at the end of the sixty months, reassess the parties'

circumstances and modify, terminate, or extend the rehabilitative spousal support as may be justified at that time.

Mr. Batt argues that the circuit court erred in not making a final, conclusive decision on the spousal support issue, instead leaving the matter open for modification after sixty months. We note that rehabilitative spousal support is modifiable pursuant to West Virginia Code § 48-8-105(b). Although Mr. Batt understandably is eager to have finality now, we find no reversible error in the circuit court's decision.

Ms. Batt argues that the family court did not award her enough spousal support and that she is entitled to a permanent award at this time. Again, we find no reversible error. The record shows that the lower courts carefully considered the evidence, and Ms. Batt may seek a modification at the end of sixty months.

Finally, Mr. Batt asserts that the family court failed to consider that he must borrow from his personal and business assets to pay the spousal support. Ms. Batt responds that Mr. Batt manipulated his income to avoid paying spousal support. These are the same arguments that the parties made with regard to child support. We reject these arguments for the same reasons we rejected them above.

## CREDITS TO OFFSET EQUITABLE DISTRIBUTION

Pursuant to a temporary order, Mr. Batt paid certain marital debt during the pendency of the divorce case. In the first appeal to circuit court, Mr. Batt argued that he did not receive the correct amount of credit against equitable distribution for the marital debt he paid up through the November 12, 2008, final divorce hearing. *See Conrad v. Conrad*, 216 W.Va. 696, 702, 612 S.E.2d 772, 778 (2005) ("Recoupment of payment of marital debt by one party prior to the ultimate division of marital property has often been permitted upon a final equitable distribution order.") (Citations omitted). The circuit court agreed with Mr. Batt and in its April 13, 2010, order remanded this issue to the family court for correction. On remand, the credit for Mr. Batt's payments through November 12, 2008, was corrected to Mr. Batt's satisfaction.

However, on remand Mr. Batt asked the family court to give him additional credit for debt he paid *after* the November 12 hearing through the entry of the final divorce order on December 31, 2008. Moreover, on remand Ms. Batt asserted that she had also paid interim marital debt so she also sought a credit. Ms. Batt asked to vouch the record with this information. The family court refused both requests for additional credits, and the circuit court affirmed.

We find no error in these rulings because both requests for credit were untimely. Mr. Batt would have known of his additional payments when the December 31, 2008, final divorce order was entered, yet he failed to file a motion for reconsideration or raise this particular issue in the first circuit court appeal. It is not clear from Ms. Batt's pro se brief exactly what interim martial debt she is referencing, but nonetheless she should not have waited until the 2010 remand to raise this issue for the first time.

6

Ms. Batt also asserts error with regard to a credit that Mr. Batt was given for mortgage payments he made on a Deep Creek rental condominium for the period March 31, 2009, through June 18, 2010. This condominium had been marital property but was awarded to Ms. Batt in the December 31, 2008, final divorce order. Mr. Batt asserted that that this property was still in both of their names, but Ms. Batt was failing to pay the mortgage so he had to pay it. Ms. Batt argues that Mr. Batt was still controlling the rental unit and receiving the rental income and deductions. It appears that this request for credit was timely asserted. We find no abuse of discretion in the family court's decision to give Mr. Batt a credit for these post-divorce payments.

Finally, the family court directed that certain amounts that Mr. Batt was ordered to pay are to be collected by the Bureau for Child Support Enforcement for remittance to Ms. Batt. Mr. Batt argues that Ms. Batt also owes him money—including attorney's fees, condominium fees, and a *Conrad* credit—yet the family court did not offset his debt to her by the amount of her debt to him. We find that such procedural matters are best left to the family court's discretion, particularly since any judgments were not yet final because the case was subject to appeal.

After a thorough review of the parties' numerous assignments of error, we conclude that the lower courts fairly balanced the parties' rights, properly applied the law, and did not abuse their discretion or commit clear error. For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis