# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jolene H.W.**
**Respondent Below, Petitioner**

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)    No. 13-0535** (Kanawha County 11-D-1813)

**David P. W.**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jolene H.W.[1], by counsel James T. Cooker, appeals the Kanawha County Circuit Court's order dated April 25, 2013, refusing petitioner's appeal of the family court's final order granting the parties a divorce, denying petitioner's request for spousal support, granting an award of child support, and equitably distributing their marital property. Respondent David P.W., by counsel Mark A. Swartz, has filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Wife and Respondent Husband were married on March 23, 1985. Respondent Husband filed for divorce on September 20, 2011, citing irreconcilable differences, cruel and inhumane treatment, and adultery. The parties have one minor child. Petitioner Wife requested spousal support and child support, claiming that she could not work and had not worked throughout the majority of the marriage. Petitioner Wife has a dental degree and has worked as a dentist at various times in the marriage but mainly functioned as a stay-at-home mother. She maintains active dental licenses in several states. She last worked actively as a dentist from June of 2008 through May of 2011, mostly part time. Petitioner also plays violin and has been compensated for her performances for many years. Respondent Husband is licensed as a dentist as well, but also received his medical degree and practices as an oral surgeon.

---

[1]"We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.,* 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

1

Based on Petitioner Wife's claim that she could not work due to hand injuries including degenerative arthritis and other hand conditions, she submitted to an Independent Medical Examination by Dr. David Soulsby on July 12, 2012. Dr. Soulsby examined her medical records, including the records of two prior hand surgeries petitioner underwent after her separation from respondent. Petitioner Wife's treating surgeon, Dr. Louis Scheker, had opined prior to the surgeries that "she will be unable to perform duties of a dentist as there is no way to reproduce function of a normal joint." Petitioner told Dr. Soulsby that she has not tried to play her violin since her surgery and that she has extreme weakness in her hands since surgery. Dr. Soulsby found a normal range of motion in both hands, but notes that evaluation of the thumb usage was "interesting." He noted that her strength testing was "inconsistent" and that her pinch test failed to even register on the machine. He states that "I can only conclude that this is, at best, an uncooperative evaluation." He based this opinion on the wide variability in the grip strength testing and the fact that petitioner received no postoperative physical therapy or occupational therapy. He felt that the lack of therapy was a "glaring omission" and that he cannot state there is any significant impairment. Thus, his opinion is that she could return to her normal occupation as a dentist.

During the divorce proceedings, Respondent Husband presented a program showing that Petitioner Wife played the violin in a theater production on July 27, 28, and 29, and August 3, 4 and 5, 2012. Further, respondent submitted a letter from "Craig" disclosing an extramarital affair between "Craig" and petitioner. "Craig" was subpoenaed and testified at one of the divorce hearings. Further, emails between petitioner and another man were submitted as evidence of a different extramarital affair which allegedly occurred in 2006.

Dr. Scheker testified during his deposition that petitioner could not work as a dentist based on her lack of hand strength. He admits that he failed to determine petitioner's grip strength prior to the surgery, and notes that she should still be able to play the violin even though it would require grip strength. In October of 2012, after both surgeries, he tested her grip strength and found it to be thirty-five pounds in each hand. He also found her pinch strength to be six pounds in one hand and nine in the other. His explanation for her vast improvement after Dr. Soulsby's examination two months prior was simply the passage of time.

A vocational report from expert witness Jane Smith was issued on both August 21, 2012, and October 30, 2012. Both indicated that there were open dentist positions in the Charleston area, and that the average income for a dentist in West Virginia is $151,450, while the average income for a dentist in Charleston is $158,600. The marital home was appraised at a value of $600,000 on April 24, 2012. The personal property in the marital home was found to be worth $58,419, and the personal property in respondent's residence was found to be worth $8,549.

After several hearings, the family court issued a final order on March 20, 2013. The circuit court denied Petitioner Wife's request for alimony and attributed an earning capacity of $151,000 per year to petitioner. This attributed amount was used in the calculation of child support. Respondent Husband was ordered to pay $801.51 per month in child support. The parents have shared custody and split the child's time between them equally. The court also

detailed the equitable distribution of the marital estate, finding that Petitioner Wife owed $51,204.82 to Respondent Husband.

Petitioner Wife appealed the final order, which was refused by the Kanawha County Circuit Court by order dated April 25, 2013. Petitioner Wife appeals from this order.

To guide our review, this Court has held that

> "[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." *Syl., Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

Syl. Pt. 1, *Melinda H. v. William R.,* 230 W.Va. 731, 742 S.E.2d 419 (2013).

Petitioner's assignments of error surround the family court's failure to award spousal support; the equitable division of marital property and debts; the application of the child support formula; the failure to award attorney's fees; and, the adoption of respondent's proposed final order. First, petitioner argues that the family court erred in not awarding spousal support because she claims that she is unable to work, while respondent makes approximately $375,000 per year. This Court has stated that

> "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

Syl. Pt. 3, *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003). A review of the record shows that there was significant evidence that petitioner is able to work. First, she worked as a dentist at different times throughout the marriage and testified that she maintains her dental license in several states. The independent medical examination completed by Dr. Soulsby and the fact that she has continued to play the violin even after her surgeries indicated that she is physically able to resume her career as a dentist. The only vocational expert testified that petitioner had an earning capacity of $151,000 per year. Further, the record shows that the family court examined the factors set forth in West Virginia Code § 48-6-301(b) which is used to determine an award of alimony, including the parties' relative ability to earn income and the education of the parties, and the court noted that respondent is paying the majority of the child's expenses, including private school, medical expenses, and other activities. Further, the family court considered West Virginia Code § 48-8-104, which states

> In determining whether spousal support is to be awarded, or in determining the amount of spousal support, if any, to be awarded, the court shall consider and

compare the fault or misconduct of either or both of the parties and the effect of the fault or misconduct as a contributing factor to the deterioration of the marital relationship.

The family court heard evidence of two different extramarital affairs, which petitioner denies, but found the testimony of one of petitioner's alleged partners to be credible. Considering all of the above, this Court does not find that the family court abused its discretion in denying petitioner's request for spousal support.

Petitioner next argues that the family court erred in awarding petitioner the marital home, which is not encumbered by a mortgage and was appraised at approximately $600,000, as she cannot afford to maintain the home without an award of spousal support. Petitioner also argues that the court erred in granting respondent the right to most of the financial accounts in exchange for granting her the home. Additionally, she argues that some of the financial accounts she was awarded have no funds, and that some of the personal property was not properly valued or credited. Moreover, petitioner maintains that respondent was improperly granted credits pursuant to *Conrad v. Conrad,* 216 W.Va. 696, 612 S.E.2d 772 (2005).

"In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review." Syl. Pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

Syl. Pt. 1, *McGee v. McGee,* 214 W.Va. 36, 585 S.E.2d 36 (2003).

First, although petitioner now claims she does not want the marital home, she requested the same in her answer to respondent's petition for divorce. Petitioner fails to cite to the record to show that she did not in fact want the home she requested, other than her proposed final order which divided the assets differently. Petitioner did not have the home appraised; as a result, the only value in evidence was the one given by respondent's appraiser. As to the financial and retirement accounts, the court heard expert testimony regarding the accounts and their value. Petitioner failed to rebut any of this testimony with documentary evidence or her own expert. Further, the evidence showed that petitioner maintained control over most of the accounts over which she now complains. Regarding the personal property, petitioner presented no evidence as to valuation differences between the value the court placed on the items and the value she claimed the items have. With regard to the *Conrad* credits, respondent is entitled to recoup payment of marital debt prior to the ultimate division of marital property. Based on our review of the record, we find no abuse of discretion or reversible error.

Next, petitioner argues that the family court erred in its application of the child support formula, because the court based its calculation on respondent making $27,528 per month while she claims he testified that he was going to begin a new contract paying him $31,250 per month.

4

Moreover, she argues that the court erred in attributing income of $151,000 to her after finding that she could resume her work as a dentist. First, petitioner produced no evidence that the contract to which respondent testified was ever executed. Although petitioner did not quote or point to specific testimony in her petition, upon a review of the family court hearings, it appears that respondent testified to contractual negotiations, not a completed and signed contract. Thus, the court did not err in using respondent's actual pay stubs to calculate his child support obligation. As to the court attributing income to petitioner, West Virginia Code § 48-1-205 states as follows:

> (a) "Attributed income" means income not actually earned by a parent but which may be attributed to the parent because he or she is unemployed, is not working full time or is working below full earning capacity or has nonperforming or underperforming assets. Income may be attributed to a parent if the court evaluates the parent's earning capacity in the local economy (giving consideration to relevant evidence that pertains to the parent's work history, qualifications, education and physical or mental condition) and determines that the parent is unemployed, is not working full time or is working below full earning capacity. Income may also be attributed to a parent if the court finds that the obligor has nonperforming or underperforming assets.

> (b) If an obligor: (1) Voluntarily leaves employment or voluntarily alters his or her pattern of employment so as to be unemployed, underemployed or employed below full earning capacity; (2) is able to work and is available for full-time work for which he or she is fitted by prior training or experience; and (3) is not seeking employment in the manner that a reasonably prudent person in his or her circumstances would do, then an alternative method for the court to determine gross income is to attribute to the person an earning capacity based on his or her previous income. If the obligor's work history, qualifications, education or physical or mental condition cannot be determined, or if there is an inadequate record of the obligor's previous income, the court may, as a minimum, base attributed income on full-time employment (at forty hours per week) at the federal minimum wage in effect at the time the support obligation is established. In order for the court to consider attribution of income, it is not necessary for the court to find that the obligor's termination or alteration of employment was for the purpose of evading a support obligation.

As stated above, this Court finds no error in the family court's determination that petitioner could resume work; thus, we find no error in the family court's calculation of support by attributing income to petitioner.

Petitioner next argues that she should have been granted attorney's fees. However, petitioner's reply notes that this issue has not been decided by the lower court. Therefore, this Court will not address this premature assignment of error. Finally, petitioner argues that the court

erred in adopting respondent's proposed final order after requesting that each party submit a proposed order. Yet, petitioner cites no legal authority for her contention that it was error for the family court to adopt verbatim the order submitted by respondent. Likewise, this Court finds no legal authority forbidding entry of an order submitted by a party, and thus finds no error regarding entry of the final order.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 28, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

**DISQUALIFIED:**

Justice Brent D. Benjamin

6